724 F.Supp. 868 (1989)
Louis STINSON, Plaintiff
v.
AMERICAN STERILIZER COMPANY, et al., Defendants.
Civ. A. No. 89-D-618-N.
United States District Court, M.D. Alabama, N.D.
September 19, 1989.
*869 Stephen X. Munger, Jay D. Milone, Jackson, Lewis, Schnitzler & Krupman, Atlanta, Ga., for defendant American Sterilizer Co.
Jim L. DeBardelaben, McPhillips, DeBardelaben & Hawthorne, Montgomery, Ala., for plaintiff Louis Stinson.

MEMORANDUM OPINION
DUBINA, District Judge.

I. Introduction
This cause is presently before the court on the defendants' motion to dismiss count one of the plaintiff's complaint, filed herein on July 11, 1989. Each side has submitted memorandum briefs outlining its respective position.[1]
On June 7, 1989, the plaintiff, Louis Stinson ("Stinson"), filed a three count complaint in the Circuit Court of Montgomery County. Count one, brought pursuant to 42 U.S.C. § 1981, is a claim of wrongful discharge based on racial discrimination; count two is a breach of contract claim, or, more specifically, a claim of breach of implied covenants of good faith and fair dealing arising out of state law; and, count three is claim of intentional infliction of emotional distress, also arising out of state law. The defendants subsequently filed in this court a petition for removal pursuant to 28 U.S.C. § 1441, basing their request on the ground that Stinson's complaint is a civil action involving a claim arising under the Constitution, laws, or treaties of the United States. Indeed, Stinson alleges that during his employment with the defendant, American Sterilizer Company ("AMSCO"), he was treated differently from his white counterparts and ultimately discharged because of his race, all in violation of the thirteenth amendment to the Constitution of the United States, which is safeguarded by 42 U.S.C. § 1981. More specifically, the defendants' actions, Stinson claims, impaired his ability to make a racially neutral employment contract.

*870 II. Allegations of Fact[2]
Stinson began his employment with AMSCO on September 27, 1976. On or around April of 1984, Stinson was promoted to supervisor in the machine shop, a management position. He claims that beginning in July of 1986, while serving as a supervisor on the first shift, he was transferred to the third shift, with the assurance that soon he would be returned to the first shift. Stinson was later transferred to the second shift, while a second shift supervisor, a white male, was moved to the first shift. In November of 1986, Stinson received a "very low" rating on his 90 day review form; he appealed to his immediate supervisors and eventually the general manager, defendant Ryan, but never receive a satisfactory explanation for the rating.
Contrary to the freedom that other white supervisors were given with respect to handling their workers, Stinson was stripped of virtually all authority over directing any employees under his supervision; furthermore, Stinson claims that his employees were witnesses to the verbal reprimands he suffered from his own supervisor. Stinson was fired on June 25, 1987; he alleges the defendants acted against him and terminated him because of his race.

III. Discussion
As a basis for their motion to dismiss, the defendants allege that even if this court assumes the allegations contained in the complaint to be true, Stinson fails to state a claim upon which relief can be granted under 42 U.S.C. § 1981. Title 42 U.S.C. § 1981 provides:
All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
Very recently, the United States Supreme Court severely curtailed what had once been a very liberal application of § 1981. In Patterson v. McLean Credit Union, ___ U.S. ___, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Court held that § 1981 "prohibits discrimination only in the making and enforcement of contracts." Patterson, 109 S.Ct. at 2372 (emphasis added). The Patterson plaintiff was a black woman employed as a teller and file coordinator by the defendant credit union for ten years, after which she was laid off. She filed suit in the district court under 42 U.S.C. § 1981, alleging that her supervisor harassed her by staring at her for minutes at a time, assigning her to demeaning tasks not assigned to other white employees, subjecting her to racial slurs, and singling her out for criticism. She further alleged that the defendant credit union failed to afford her training for higher level jobs, to grant her a wage increase, and to promote her, all because of her race.
The Court rejected Patterson's argument that these claims, with the exception of the failure to promote claim, fell under the scope of § 1981. Indeed, the Court stated that none of the complained of conduct "involve[d] either a refusal to make a contract with [Patterson] or the impairment of her ability to enforce her established contract rights" within the meaning of § 1981. 109 S.Ct. at 2374. Furthermore, the Court held that while § 1981 does protect both the formation of a contract at the inception of employment and, under limited circumstances, a promotion which "rises to the level of an opportunity for a new and distinct relation between the employer and the employee," 109 S.Ct. at 2377, § 1981 does not extend to conduct "by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." 109 S.Ct. at 2373. More specifically, with respect to the proscribed discrimination in the making of a contract, the Court stated:

*871 The first of these protections [the making of a contract] extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend ... to conduct by the employer after the contract relation has been established ... Such post formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

Patterson, 109 S.Ct. at 2372-2373 (emphasis added).
This court is constrained, then, to interpret Patterson as generally holding that in some instances, evidence of racial harassment in the work-place may be indicative and probative of an employer's preformation intent not to enter into a contract with an employee on racially neutral terms. Nevertheless, the focus of the trier of fact and the critical question he must ask in a § 1981 suit "remains whether the employer, at the time of the formation of the contract, in fact intentionally refused to enter into a contract with the employee on racially neutral terms." Id., at 2376-2377. Accordingly, those cases wherein the gravamen of the complaint concerns the conditions of continuing employment are "more naturally governed by state contract law and Title VII." Id., at 2373.
Finally, under Patterson, the right to enforce contracts under § 1981 does not extend beyond conduct by an employer which impairs an employee's access to the legal process. Id., at 2373. Therefore, the enforcement provision of § 1981 simply removes the "legal disabilities to sue, be a party, testify or enforce a contract." Id., at 2373.
In the aftermath of Patterson, several courts have been equally compelled to enforce the Supreme Court's restrictive interpretation of § 1981. Risinger v. Ohio Bureau of Workers Compensation, et al., 883 F.2d 475 (6th Cir.1989); Hannah v. The Philadelphia Coca-Cola Bottling Company, Civ. No. 89-0699 (E.D.Pa. June 23, 1989) (1989 Westlaw 71565); Guerra v. Tishman East Realty, Civ. No. 89-1225 (S.D.N.Y. June 16, 1989) (1989 Westlaw 71145). See Ellis, et al. v. Walker Development Company, Inc., 884 F.2d 467 (9th Cir.1989); Williams v. Giant Eagle Markets, 883 F.2d 1184 (3rd Cir.1989).
In the present case, count two of Stinson's complaint, as amended, states that during his employment with AMSCO, Stinson was subjected to, judged by and evaluated by standards different from those of whites, and finally discharged, because of his race. He alleges that this discriminatory treatment occurred after he was transferred as a supervisor from the first shift to the third shift, in July of 1986. In an effort to circumvent the application of Patterson, Stinson concludes that "the implied contract offered the plaintiff [Stinson] by the defendants was not the same implied contract as offered to similarly situated white employees." The court believes that Stinson's position must fail as a matter of law.
True, Patterson does suggest that racial harassment may be used as "evidence that a divergence in the explicit terms of particular contracts is explained by racial animus," 109 S.Ct. at 2376, and may thus give rise to a § 1981 suit; however, Stinson has not identified any explicitly divergent terms of employment that were offered to him in 1976. In fact, not only does he admit that certain terms in question contained in the AMSCO employee handbook were offered to all employees, but he states that the discriminatory conduct, which is his evidence of preformation discriminatory intent, occurred nine years after the parties allegedly entered into a contract.
Moreover, Stinson is foreclosed from arguing that his transfer to a new shift in 1986 gave rise to an implied contract, thus invoking the application of § 1981; at no point in his complaint or brief has he suggested that the 1986 transfer indicated an *872 opportunity to enter into a new and distinct relationship with AMSCO. Instead, this court believes that AMSCO's alleged conduct "does not involve the right to make a contract, but rather implicates the performance of established contract obligations ..." 109 S.Ct. at 2374. See Dangerfield v. The Mission Press, Civ. No. 88-C7199 (N.D.Ill. July 27, 1989) (1989 Westlaw 88199). Stinson's claims, then, are not actionable under § 1981. Troublesome as it may be to this court to effectively leave Stinson bereft of an opportunity to pursue his civil rights claim in this court, this court can see no other course of action, in light of Patterson, than to dismiss count one of Stinson's complaint. Accordingly, for all of the above reasons, it is the opinion of this court that the defendants' motion to dismiss count one of the complaint, as amended, is due to be GRANTED and the § 1981 claim is due to be DISMISSED from this cause with prejudice.
Moreover, since this court has determined that count one of the complaint is due to be dismissed with prejudice, this court has the discretion to either dismiss the remaining state claims because of lack of pendant jurisdiction, see e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and Brown v. Masonry Products, Inc., 874 F.2d 1476 (11th Cir.1989), or decline to exercise continued jurisdiction over the nonfederal claims and remand the case under 28 U.S.C. § 1447(c), "for at this point the case becomes one `removed improvidently and without jurisdiction'." Spencer v. New Orleans Levee Board, etc., 737 F.2d 435 (5th Cir.1984). This court declines to exercise continued jurisdiction over the pendant claims. Accordingly, it is the opinion of this court that the remaining state claims in this cause should be REMANDED to state court.
A separate order will be entered in accordance with this Memorandum Opinion.
DONE.
NOTES
[1] Also pending in this cause are: the plaintiff's objection to and amended objection to removal of this action, filed herein on July 5, and 6, 1989, respectively; the plaintiff's motion to remand this action to the Circuit Court of Montgomery County, Alabama, filed herein on July 17, 1989; and, the defendants' motion for summary judgment on count two of the complaint, filed herein on July 26, 1989.
[2] The court has evaluated the facts in a light most favorable to Stinson.