Louis STINSON, Plaintiff,

v.

AMERICAN STERILIZER COMPANY, a corporation, Defendant.

Civ. A. No. 88–D–1199–N.

United States District Court, M.D. Alabama, N.D.

Nov. 1, 1989.

Jim L. DeBardelaben of McPhillips, De-Bardelaben and Hawthorne, Montgomery, Ala., for plaintiff.

Stephen X. Munger and Jay D. Milone of Jackson, Lewis, Schnitzler and Krupman, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

DUBINA, District Judge.

### I. Introduction

This cause is before the court on American Sterilizer Company's ("AMSCO") motion filed herein on May 25, 1989, for the imposition of Rule 11 sanctions against counsel for the plaintiff, the Honorable Jim L. DeBardelaben ("DeBardelaben"). After long and careful consideration of the briefs and accompanying materials submitted by each side in support of and in opposition to said motion, as well as of this court's previous memorandum opinions issued in this case and its companion[1] on June 1, 1989, and September 19, 1989, respectively, this court is of the opinion that the conduct of DeBardelaben in the instant case warrants the imposition of Rule 11 sanctions.

### II. Background

Since this court treats the issue of sanctions imposed pursuant to Rule 11, *Fed.R. Civ.P.*, as a very serious matter, this court feels that in fairness to DeBardelaben, it must clearly, and with specificity, set forth both the underlying facts and its reasons for granting AMSCO's motion.

### A. "Stinson I"

On November 23, 1988, Louis Stinson ("Stinson"), through his retained counsel, DeBardelaben,[2] filed an action under Title

---

**1.** After this court dismissed the present case without prejudice ("Stinson I"), counsel for Stinson filed another action in the Circuit Court of Montgomery County on June 7, 1989, which was subsequently removed to federal court on the defendants' petition, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331. *Stinson v. American Sterilizer Company, et al.*, Civ. Action No. 89–D–618–N ("Stinson II"). Although it added the names of individual employees of AMSCO as defendants and included two state law claims, Stinson II contained the same allegations of racial discrimination in job employment that Stinson I contained. The significant difference between Stinson I and Stinson II is that Stinson I was brought under Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Stinson II was brought pursuant to 42 U.S.C. § 1981. On September 19, 1989, this court issued an order and memorandum opinion dismissing the federal claim in Stinson II and remanded the action to the Circuit Court of Montgomery County. 724 F.Supp. 868.

**2.** This court recalls that at a June 20, 1989, hearing on AMSCO's motion for the imposition of Rule 11 sanctions, counsel for each side and this court agreed that if sanctions were warranted in this case, they would be levied only against DeBardelaben, as his actions are what is at issue. Therefore, for ease of reference and to eliminate confusion, the court uses the name

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), in this court, alleging that AMSCO and its employees acted in a discriminatory manner against him while he was employed with AMSCO, and ultimately terminated him from his employment because he is black. DeBardelaben failed to follow the clearly articulated procedural deadlines set forth under the *Federal Rules of Civil Procedure* ("*Federal Rules*"), however, and failed to provide this court with a reasonable, "good cause" explanation for this failure; the court, therefore, dismissed Stinson I without prejudice, and never reached the merits of the case.

More specifically, once Stinson received his requisite "right to sue" letter, issued by the EEOC on September 20, 1988, he had ninety days, or until December 19, 1988, in which to file his corresponding complaint with the court.[3] On November 23, 1988, DeBardelaben filed the Title VII complaint with the office of the United States District Court Clerk for the Middle District of Alabama ("Clerk"), allegedly under the assumption that the Clerk would perfect service through certified mail.[4] It is undisputed that DeBardelaben had one hundred and twenty days after the filing of the complaint, or until March 23, 1989, in which to serve AMSCO.[5] Moreover, along with the complaint, DeBardelaben submitted a set of interrogatories and a request for production of documents, responses to which would have been due forty-five days after the service of the summons and complaint, or on January 7, 1989.[6]

This court found that DeBardelaben took no action when he did not receive AMSCO's answer to the complaint, which would have been due on December 13, 1988[7]; nor, did he take any action when the interrogatories were not answered by the January 7, 1989, deadline. In fact, this court found that

DeBardelaben made no appreciable inquiry as to whether or not AMSCO had been served until sometime in April of 1989. Indeed, DeBardelaben admits that it was not until April 6, 1989, one hundred and thirty-four days after he filed the summons and complaint with the Clerk, that he discovered the complaint had not been served. On that same day, he served an alias summons and the complaint on AMSCO, and on May 19, 1989, thirty-three days after his discovery that the complaint had not been served, twenty-three days after AMSCO filed its Rule 4(j) motion to dismiss, and two days after AMSCO filed its motion for protective order, DeBardelaben filed with this court a motion for enlargement of time for serving the complaint. On May 26, 1989, the court conducted a hearing on AMSCO's motion to dismiss for insufficiency of service. On June 1, 1989, the court issued its memorandum opinion and order dismissing Stinson I without prejudice. Along with its motion to dismiss, filed on May 25, 1989, AMSCO filed its motion for the imposition of Rule 11 sanctions in the form of attorneys' fees.

**B. "Stinson II"**

Because the time for filing the Title VII action expired in December of 1988, Stinson was foreclosed from filing another complaint under Title VII against AMSCO. Therefore, on June 7, 1989, DeBardelaben filed a new complaint in the Circuit Court of Montgomery County against AMSCO, naming the company and several of its employees as defendants. This new complaint alleged the same racially discriminatory conduct on the part of AMSCO and the new defendants as had been charged in Stinson I. This time, however, DeBardelaben brought the action under 42 U.S.C. § 1981, and under the state law theories of

---

"DeBardelaben" when referring to all actions taken on behalf of the plaintiff.

**3.** The Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1).

**4.** DeBardelaben asserted, in his briefs in opposition to the motion to dismiss and the motion for Rule 11 sanctions, that his office customarily

prepares the summons and complaint for certified mail and delivers both to the Clerk for mailing.

**5.** Rule 4(j), *Fed.R.Civ.P.*

**6.** Rule 33(a) and Rule 34(a), *Fed.R.Civ.P.*

**7.** Rule 12(a), *Fed.R.Civ.P.*

breach of contract and intentional infliction of emotional distress. On July 8, 1989, Stinson II was removed to federal court on the defendants' amended petition for removal, based on 28 U.S.C. § 1441 and 28 U.S.C. § 1331. On July 11, 1989, the defendants filed a motion to dismiss count one of the complaint (racial discrimination under § 1981). On July 17, 1989, DeBardelaben filed a motion to remand this action to the Circuit Court of Montgomery County. On July 26, 1989, the defendants filed a motion for summary judgment on count two of the complaint (state law breach of contract claim). Memorandum briefs were filed in support of and in opposition to each of these motions.

For a second time, this court never reached the merits of Stinson's discrimination claims. Based on its analysis of the pleadings, this court was constrained to hold that Stinson's § 1981 claim was not actionable in light of the Supreme Court's delineation of the scope of § 1981 in *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Thus, this court dismissed the federal claim from Stinson II on September 19, 1989. Declining to exercise pendant jurisdiction over the remaining state law claims, the court remanded those claims to the Circuit Court of Montgomery County.

### III. Discussion

After allegedly making the discovery on April 6, 1989, that the deadline had passed for serving the summons and complaint, DeBardelaben filed two motions with the court which make up the gravamen of AMSCO's motion for Rule 11 sanctions. First, AMSCO argues that DeBardelaben served an alias summons and complaint on AMSCO on April 6, 1989, knowing, or, with reason to know, both that he had no "good cause" for his failure to perfect service, and that the complaint was not actionable, as not only was Stinson time-barred from pursuing his discrimination claim under Title VII, but he was time-barred from serving the complaint under the *Federal Rules.* Thus, DeBardelaben had reason to know that more likely than not, the complaint

would be dismissed under Rule 4(j), *Fed.R. Civ.P.* This court agrees.

Second, AMSCO argues that after having been served with AMSCO's motion to dismiss, DeBardelaben filed a motion for enlargement of time to serve the complaint on May 19, 1989, a full thirty-three days after realizing that the original complaint had not been served. AMSCO contends that had DeBardelaben made reasonable inquiry of the facts and circumstances on April 6, 1989, he would have known that he had no "good cause" for filing a motion for enlargement of time. Again, this court agrees.

### A. Standard of Review: "Objective Standard"

Rule 11, *Fed.R.Civ.P.,* provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....

As a result of the 1983 amendments to Rule 11, a lawyer is obligated to inquire as to the law and facts of a particular issue before he or she submits any motion, pleading or paper. Thus, Rule 11 is intended to address two separate problems which are major sources for litigation delay and expense. First, Rule 11 is meant to decrease the likelihood that parties will file frivolous pleadings or papers with the courts. Second, Rule 11 is intended to decrease the likelihood that parties will use judicial procedures as a weapon for personal or economic harassment. *Zaldivar v. City of*

*Los Angeles,* 780 F.2d 823, 830 (9th Cir. 1986).

■ With respect to the issue presented here, Rule 11 is intended to discourage pleadings or papers that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith." *Zaldivar,* 780 F.2d at 831 (emphasis added); *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151 (3rd Cir.1986). Compliance with the rule is judged, therefore, by an objective standard of "reasonableness under the circumstances." *Threaf Properties v. Title Insurance Company of Minnesota,* 875 F.2d 831, 835 (11th Cir.1989). In *Threaf,* the Eleventh Circuit explored the meaning of this new "objective standard:"

> The objective standard introduced by the 1983 amendments was intended to strengthen the rule by creating an affirmative duty of inquiry as to law and fact before any pleading, motion, or other paper is submitted. Under the rule the district court must focus on what was reasonable for an attorney to believe at the time the pleadings were filed, not on what the court later finds to be the case.

*Id.* at 835 (citations omitted); *O'Neal v. DeKalb County, Ga.,* 850 F.2d 653 (11th Cir.1988). Furthermore, *Threaf* provides guideline questions for the district court to use in determining whether or not an attorney's actions may be deemed "reasonable" under the circumstances:

> 1. How much time for investigation was available to the signer;
> 2. Whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper;
> 3. Whether the pleading, motion, or other paper was based on a plausible view of the law;
> 4. Whether he depended on forwarding counsel or another member of the bar.

*Id.* at 835. Fully understanding that this standard might expose attorneys to an onslaught of sanctions against them in situations where they might have made better decisions, the *Threaf* court issues this caveat:

The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading was submitted.

*Id.* at 835 (quoting *Fed.R.Civ.P.* 11 advisory committee note) (emphasis added); *Donaldson v. Clark,* 819 F.2d 1551 (11th Cir. 1987) (en banc).

**B. Monetary Sanctions**

Rule 11 allows the district court the discretion to fashion those sanctions appropriate under the circumstances. Indeed, the express language of Rule 11 is that the court may impose upon the offending counsel or party, "an appropriate sanction, which may include … a reasonable attorney's fee." In *Donaldson,* the Eleventh Circuit gave express approval of the imposition of monetary sanctions against a violating party:

> The imposition of a monetary sanction is a particularly reasonable use of a court's discretion under Rule 11. The everyday meaning of "appropriate sanction" encompasses a monetary sanction … When imposed upon a lawyer, a financial penalty forces the lawyer rather than the client to bear the costs of violations of the rule…. We hold that monetary sanctions serve the purposes of Rule 11 and may be imposed as sanctions for Rule 11 violations in appropriate cases so long as they are imposed in accordance with due process."

*Id.,* at 1557–1558 (citations omitted).

**C. Due Process**

■ Undoubtedly, parties facing the possibility of the imposition of Rule 11 sanctions have interests sufficient to qualify them for protection under the due process clause of the fifth amendment. *Donaldson,* 819 F.2d at 1558; *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). Though parties are entitled to some due process, the exact process due depends on the circumstances. In *Donaldson,* the Eleventh Circuit provided several

factors to help the district court determine the measure of process due in the case before it:

> These factors include but are not limited to: the interests of attorneys and parties in having a specific sanction imposed only when justified; the risk of an erroneous imposition of sanctions under the procedures used and the probable value of additional notice and hearing; and the interests of the court in efficiently monitoring the use of the judicial system and the fiscal and administrative burdens that additional procedural requirements would entail. Providing due process will ensure that Rule 11 will not be applied arbitrarily, that erroneous application of the rule will be minimized, and that creative legal arguments and vigorous advocacy will not be stifled.

> \*     \*     \*     \*     \*     \*

> Due process requires that the attorney ... has fair notice of the possible imposition of Rule 11 sanctions and of the reasons for their imposition. The existence of Rule 11 itself constitutes a form of notice since the rule imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed....

*Donaldson,* 819 F.2d at 1558–1560 (footnotes omitted).

In the present case, DeBardelaben received the first written notice of AMSCO's request for Rule 11 sanctions in AMSCO's brief, filed on May 25, 1989. On May 26, 1989, this court conducted a hearing on AMSCO's motion to dismiss. During this hearing, counsel for each side presented live witnesses, and DeBardelaben was given full opportunity to present evidence tending to explain the reason for delay in serving the complaint upon AMSCO. After entering an order and memorandum opinion dismissing Stinson's complaint without prejudice on June 1, 1989, this court issued another order, setting the hearing on AMSCO's motion for Rule 11 sanctions on June 20, 1989. Each side submitted briefs outlining its respective position.

*1. The May 25, 1989, Hearing*

■ Although this hearing was held pursuant to AMSCO's motion to dismiss, in articulating his defense to AMSCO's charge that he did not show due diligence in perfecting service, DeBardelaben also argued part of his defense to AMSCO's motion for Rule 11 sanctions.

In his brief submitted in opposition to the motion to dismiss, DeBardelaben admitted that the complaint was not served on AMSCO until 134 days after it was filed; additionally, he stated that he did not discover that there was no evidence of service until April, when he conducted an in-house review of the Stinson file. DeBardelaben claims that he then contacted the Clerk and was informed that it, too, had no record of service. Through use of the sworn affidavit of Bonny Sanders, DeBardelaben's secretary, filed as an appendix to his brief in opposition to the motion to dismiss, DeBardelaben attempted to place the blame for failure to serve AMSCO upon either the Clerk or the United States mail. Specifically, Ms. Sanders, through her affidavit, averred that she followed the usual office practice for service of process in federal court by preparing an envelope for certified mail and giving it to the runner to deliver to the Clerk. She stated that her understanding was that the Clerk's office personnel were supposed to place a copy of the filed complaint in the prepared envelope and mail it to AMSCO. She contended through affidavit that all required certified mail documents were attached to the Stinson complaint when it was filed.

Indeed, at the hearing on May 26, 1989, Ms. Sanders testified that she prepared the summons and complaint in this cause for service by certified mail. Notwithstanding the fact that the court found her testimony credible, the court found that the summons and complaint were returned to Stinson's counsel for service on AMSCO. Once it became clear through testimony that the summons and complaint had been returned to DeBardelaben's office runner, DeBardelaben attempted to "change horses in the middle of the stream," and blame the delay on the runner who filed the summons and

complaint with the Clerk (the runner was not present at the hearing).

The court also heard testimony from United States Deputy Clerks for the Middle District of Alabama: Martha Latimer, Pat Green, and Clayton Azbell. Based on their testimony, the court found that when the summons and complaint were brought to the Clerk by DeBardelaben's runner on November 23, 1988, they were returned to the runner for service on AMSCO. Each deputy clerk described in detail the procedure the Clerk's office follows when a new case is filed in the Middle District. Each deputy clerk testified that based upon a review of all court documents, including the docket sheets, the summons and complaint were returned to Stinson's counsel for service. DeBardelaben never contended that he received different information from the Clerk.

In its memorandum opinion and order dated June 1, 1989, this court dismissed Stinson's complaint without prejudice, based on the court's finding that DeBardelaben had made no appreciable showing of "good cause" for the delay in service on AMSCO. This court concluded that:

> Stinson's counsel was not diligent in effecting service of the complaint upon AMSCO. Indeed, the record in this case demonstrates an incredible lack of diligence by Stinson's counsel by failing to perfect service in a timely manner, by failing to discover that it had not been perfected, and by delaying filing of the motion for enlargement of time for serving the complaint ... Stinson cannot establish "good cause" for the delay. Stinson's counsel was retained over a year and a half before the deadline. Stinson's counsel was in contact with AMSCO's general manager in Montgomery, Alabama, and AMSCO's counsel regarding this matter over a year and a half before the deadline. Thus, Stinson was fully capable of serving AMSCO within the time limits. Stinson's counsel offers no reasonable excuse for the delay.[8]

## 2. The June 20, 1989, Hearing

In his defense against the motion for sanctions, DeBardelaben argued in a brief filed on June 15, 1989, and at the sanction hearing, that any error committed by him in Stinson I was harmless, as Stinson still had recourse through a lawsuit filed pursuant to 42 U.S.C. § 1981 (Stinson II). He contended that the same remedies available to Stinson under 42 U.S.C. § 2000e *et seq.*, were available to him under 42 U.S.C. § 1981: "[t]hus, the [p]laintiff has not suffered any loss of remedies available pursuant to Title VII[,] but has gained the possibility of recovery [of] compensatory damages and punitive damages from the named defendants."[9] Furthermore, DeBardelaben argued in brief, and at the June 20, 1989, hearing, that his actions were not only reasonable, but were warranted under the circumstances:

> Neither the Motion for Enlargement, nor the Opposition to Defendant's Motion to Dismiss were made for any improper purpose.... On the contrary, based upon reasonable inquiry and to the best of counsel's knowledge, information and belief formed after inquiry, the motions for enlargement of time as well as the opposition to Defendant's Motion to Dismiss, were well founded in light of the circumstances then existing.
>
> Plaintiff's counsel's inquires into the circumstances and the action taken were not only reasonable under the then existing circumstances, the facts and the law supported, even required, the actions. First there was conflicting evidence as to the service of the complaint. Counsel's file and affirmances from his secretary reflected service by certified mail.... The office of the clerk contended that service had not been made and further that it had no record of service being requested by certified mail. The situation, together with the applicable law, required immediate action to rectify the situation and to perfect service of process, especially since the law surrounding the enforcement of the 120 day ser-

---

**8.** Memorandum Opinion, June 1, 1989, at pp. 4–5 (footnote omitted).

**9.** Memorandum Brief in Opposition to Defendant's motion for sanctions, at pp. 1–2.

vice limits was based upon (1) the particular facts of each case; (2) the length of time beyond the 120 day period in which service was made; (3) the diligence exercised by counsel to effectuate service upon learning it had not been effected; and (4) good cause being determined on a case by case basis.

While the Defendant seeks its costs and attorneys fees incurred to "defeat" this action, the Defendant did not and has not defeated this action.

\* \* \* \* \* \*

Under facts and circumstances that existed at the time, Plaintiff [sic] counsel certainly performed a reasonable inquiry before filing any briefs or motion.[10]

This court sees quite a different picture when it looks at the facts and circumstances that existed at the time DeBardelaben filed each motion. First, at no point did DeBardelaben check with the Clerk before the expiration of the Title VII deadline or the *Federal Rules* deadline to determine whether or not service had been perfected. Further, he made no inquiry of the status of the lawsuit when he did not receive AMSCO's Answer on, before, or any time after December 3, 1988. Finally, he made no effort to determine why AMSCO had not filed any response to his interrogato-

ries on, before, or after January 7, 1989. As an explanation for his conduct DeBardelaben states that in January of 1989, he received so much material from the EEOC which was similar to the material which he expected to be contained in AMSCO's response to his interrogatories, that he made the "reasonable" assumption that this material was, in fact, AMSCO's response to his interrogatories. This court does not find that assumption reasonable. This court is of the opinion that after realizing, on April 6, 1989, that AMSCO had not been served within the one hundred and twenty day time limit, DeBardelaben had no reason, based on the facts that were available to him, to believe he had acted with due diligence or that he had "good cause" for the delay in serving the complaint. Moreover, DeBardelaben should have known that AMSCO's logical reaction to his alias summons would be to file a Rule 4(j) motion to dismiss.[11]

This court would have a much easier time believing that DeBardelaben's efforts were reasonable if he had offered an explanation as to why he waited nearly a month, after both discovering that the summons and complaint had not been served within the *Federal Rules* deadline and realizing that AMSCO had filed a motion to dismiss,

---

10. *Id.* at pp. 3–5.

11. Although there are no cases in this circuit which have addressed the question of sanctions based on an attempt to serve a defendant well after the passing of the *Federal Rules* deadline, this court has found a Seventh Circuit case which is similar in nature to the present one. In *Ordower v. Feldman,* 826 F.2d 1569 (7th Cir.1987), the Seventh Circuit affirmed the district court's imposition of Rule 11 sanctions against Ordower, who was both counsel and one of the plaintiffs in the case. Essentially, Ordower filed a complaint against numerous defendants on behalf of himself and others, alleging that the defendants violated the Securities Exchange Act of 1934, the Commodities Exchange Act, the Racketeer Influenced & Corrupt Organizations Act (RICO), and state law. However, Ordower neglected to serve one of the defendants for over seven months after the initial filing. The district court dismissed the complaint without prejudice on the defendant's Rule 4(j) motion to dismiss, noting that the plaintiff's service was vexatious and unreasonable; that the service of process multiplied the judicial

proceedings; and that the plaintiff had strong reason to believe that a Rule 4(j) motion to dismiss would be granted. Stating that it was sufficiently familiar with the litigation to impose sanctions "without the necessity of time sheets and other evidence of costs," the district court ordered the plaintiffs and counsel of record to pay $1,000.00 to defendant Sinclair Global.

Because the district court had been unclear as to whether it imposed sanctions pursuant to Rule 11 and/or to 28 U.S.C. § 1927, the Seventh Circuit was forced to examine the court's action under both standards. After acknowledging that under Rule 11, the question of what constitutes an appropriate sanction must be answered within the sound discretion of the district court judge, the Seventh Circuit found that the judge's choice of sanctions, if made under Rule 11, was not an abuse of discretion, even though the court awarded the $1,000.00 without first having evidence of attorneys' fees before it.

This court believes that there is a stronger basis for the imposition of sanctions in this case than what was before the district court in *Ordower.*

to file a motion for enlargement of time to serve the complaint. Unlike DeBardelaben, this court is not satisfied that he acted *reasonably* after *reasonable* inquiry into the facts of this case. DeBardelaben's behavior, coupled with his attempts at the hearing on May 26, 1989, to blame any delay in service on the Clerk, leads this court to believe that he did not act with diligence in handling Stinson's lawsuit.

Finally, as to DeBardelaben's argument that this court should be lenient with him because his client has not been substantially harmed, this court feels to the contrary. What makes this case so tragic and what offends this court most, is that because of DeBardelaben's actions, or lack thereof, Stinson has been denied his day in court. Indeed, in light of the Supreme Court's recent ruling in *Patterson*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), this court held that the nature of Stinson's claim in Stinson II was not one which would give rise to a lawsuit instituted under 42 U.S.C. § 1981.[12] Regrettably, this court had no choice but to dismiss Stinson's federal claim. Unfortunately, it is the client, Stinson, who suffers the most.

In a perfect world, mistakes are never made. In the rather imperfect world in which we live, however, mistakes occur every day in the practice of law. This court would think long and hard, therefore, be-

fore imposing sanctions on an attorney for "mere mistake." In the instant case, what this court does find inexcusable, however, is: the gross negligence with which DeBardelaben handled Stinson's affairs, which surely surpasses "mere mistake," his failure to see or acknowledge that his actions have caused AMSCO and this court unnecessary time and expense, his refusal to accept the blame for his errors, and, his failure to acknowledge the consequences his actions have had on his client. Accordingly, it is the opinion of this court that AMSCO's motion for the imposition of Rule 11 sanctions is due to be granted.

### D. Attorney's Fees

In its motion for sanctions, AMSCO requests that the court award counsel for AMSCO reasonable attorney's fees for work done on this case from April 6, 1989, to the present. Specifically, counsel for AMSCO contends that it expended a considerable amount of time preparing the motion to dismiss for insufficiency of service of process, motion for protective order and motion for sanctions. As a supplement to its motion, counsel for AMSCO submits the affidavit of Steven X. Munger, which documents the total number of hours of work performed by each of AMSCO's attorneys and an hourly rate for each. A breakdown of those figures is as follows:

| Activity | SXM[13] | JDM[14] | GRK[15] |
|---|---|---|---|
| Research regarding Motion to Dismiss, Motion for Protective Order and Motion for Sanctions | 24.0 | 29.0 | |
| Preparation of Motion papers | 34.7 | 33.3 | |
| Factual investigation | 5.0 | 6.9 | 5.5 |
| Preparation for Hearing | 3.7 | 3.6 | |
| Analysis of Complaint and Plaintiff's response to Motion | 6.5 | 6.1 | 5.3 |
| TOTAL HOURS | 74.7 | 79.4 | 10.8 |
| HOURLY RATE | $150 | $120 | $170 |
| TOTAL FEES | $11,205 | $9,735[16] | $1,836 |

**TOTAL COMBINED FEES REQUESTED:** $22,776.00

12. *See* Memorandum Opinion in *Stinson v. AMSCO et al.,* Civil Action No. 89–D–618–N.

13. Steven X. Munger is an associate with the law firm of Jackson, Lewis, Schnitzler & Krupman ("Jackson") in Atlanta, Georgia. He is lead counsel for AMSCO in this action. Affidavit of Steven X. Munger ("Affidavit") at p. 1.

14. Jay D. Milone is an associate at the Jackson law firm who worked with Mr. Munger on this case. Affidavit at p. 2.

15. Gary R. Kessler is a partner at the Jackson law firm who worked with Mr. Munger on this case. Affidavit at p. 2.

16. According to the Affidavit, Mr. Milone worked on this case for 38 hours at $120/hr. For 41.4 hours, he worked on this case at $125/hr (the retainer rate).

The Supreme Court has clearly articulated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).[17] Indeed, such a "calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The product of reasonable hours multiplied by a reasonable rate does not, however, end the inquiry. As explained by the *Hensley* court, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward...." *Id.* at 434, 103 S.Ct. at 1940 (footnote omitted). In defining these "other considerations," the *Hensley* court spoke approvingly of using the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).[18]

In essence, there really is no precise rule or formula for making the determination of what constitutes a reasonable fee. The district court has discretion in determining the amount of an award of a reasonable attorney's fee, and, absent a clear abuse of that discretion, such an equitable judgment will not be disturbed on appeal. *Hensley*, 461 U.S. at 436–437, 103 S.Ct. at 1941. Against the background of these guidelines, this court now turns its attention to AMSCO's petition for sanctions in the form of attorney's fees.

#### 1. Reasonable Hours

The time and labor required to prosecute an action are a "necessary ingredient" to any fee award. *Johnson*, 488 F.2d at 717. AMSCO was represented throughout this case by three attorneys from the Atlanta law firm of Jackson, Lewis, Schnitzler & Krupman: Steven X. Munger ("Munger"), Jay D. Milone ("Milone") and Gary R. Kessler ("Kessler"). As shown by the chart listing the breakdown of time expended on this case, Munger claims to have worked 74.7 hours since April 6, 1989; Milone claims to have worked 79.4 hours since April 6, 1989; and, Kessler claims to have worked 10.8 hours since April 6, 1989, making the total number of hours expended 164.9.

In assessing the reasonableness of the hours claimed, the court has considered the novelty and difficulty of the case. While there is nothing novel about racial discrimination in employment, the time expended on this case concerned the procedural time limitation that Stinson, through DeBardelaben, was to have satisfied in order to ensure this action's survival. It is true that all competent attorneys must have a good

17. The court has applied the rationale and method for awarding attorneys' fees in civil rights cases pursuant to the Civil Rights Attorney's Fee Awards Act, 42 U.S.C. § 1988, to the instant case.

18. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with a client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719. As a caveat to the approval of these factors, the *Hensley* Court noted that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate. *See also, Mayson v. Pierce*, 806 F.2d 1556 (11th Cir.1987).

Thus, in the instant case, in considering what constitutes a reasonable hourly rate and hours expended herein, this court has incorporated the *Johnson* factors into its analysis.

working knowledge of the rules of federal civil procedure. This case was complicated, however, because it required the satisfaction of filing requirements imposed by Title VII. AMSCO's counsel is well acquainted with employment law, and has exhibited the requisite understanding of the interrelationship of the procedural deadlines needed to successfully defend its client in this case. After scrutinizing the total number of hours submitted by attorneys Munger, Kessler and Milone, as well as the sworn affidavit submitted by attorney Munger, which itemized in specific detail the work performed by them, this court is of the opinion, and so finds, that AMSCO's attorneys have not overstated their hours, nor has their over-zealousness caused them to expend more hours than were reasonably necessary in the preparation of the motions submitted and the hearings held in this case. Accordingly, this court finds that Munger is due to be compensated for 74.7 hours of work, Milone is due to be compensated for 79.4 hours of work, and Kessler is due to be compensated for 10.8 hours of work.

### 2. Prevailing Market Rate

This court has found the computation for reasonable fees of the attorneys in this case somewhat more difficult. Undoubtedly, the fee applicant bears the burden of producing satisfactory evidence—in addition to the attorney's own affidavit—that the requested rate is in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. See Blum v. Stenson, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Munger, one of the fee applicants, has submitted a personal affidavit attesting to his hourly rate and time expended, as well as the hourly rates and time expended for Milone and Kessler. No other affidavits have been submitted.[19] Although the court is familiar with the reputation of the firm these attorneys represent, none of the attorneys has personally practiced in this court prior to this case. Further, these attorneys are based in Atlanta, Georgia, yet they have not submitted any other materials tending to show that the requested hourly fees are consistent with the hourly rates in Atlanta. This court must resort, therefore, to its own experience in the area of employment law and its knowledge of the rates charged by attorneys. Accordingly, this court is of the opinion that the requested rates of Munger, Milone and Kessler are due to be reduced by 30%. This court believes that the reasonable and appropriate hourly rates to be awarded counsel for AMSCO in this case are: Munger—$105.00; Milone–$84.00 [20]; and, Kessler—$119.00.

Counsel for AMSCO is due to be awarded, therefore, the following as attorneys' fees:

For Munger's services, 74.7 hours × $105.00/hr.... $7,843.50.

For Milone's services, 79.4 hours × $84.00/hr. ... $6,669.60.

For Kessler's services, 10.8 hours × $119.00/hr. ... $1,285.20.

The total combined fees awarded: $15,798.30.

---

**19.** Though DeBardelaben has not briefed this point, it is this court's opinion that counsel could have been more diligent in following the letter and spirit of Local Rule 20:

(c) the motion [for attorney's fees] shall specify the judgment and the statute or other grounds on the basis of which entitlement to the award is claimed and shall state the amount (or provide a fair estimate of the approximate amount) of the fees and expenses sought. Within thirty (30) days (or such other period as the court may prescribe) after filing the motion, the movant shall file and serve a detailed specification and itemization of the requested award, **with appropriate affidavits** *and* **other supporting materials.**
Local Rules for the Middle District of Alabama No. 20 (emphasis added).

**20.** This court has elected to award Mr. Milone a rate of $84.00 for all hours expended.

*IV.  Conclusion*

In conclusion, it is the opinion of this court that AMSCO's motion for the imposition of Rule 11 sanctions is due to be GRANTED and fees awarded as heretofore set forth.