Richard GREGORY, individually and on behalf of all others similarly situated, Plaintiff,

v.

HARRIS–TEETER SUPERMARKETS, INC., Defendant.

No. C–C–87–0461–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 22, 1990.

Michael A. Sheely, Russell & Sheely, Charlotte, N.C., for plaintiff.

John O. Pollard, Blakeney Alexander & Machen, Charlotte, N.C., for defendant.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on (1) Plaintiff's Motion to Amend Complaint, filed July 19, 1989, (2) Plaintiff's Second Motion to Amend Complaint, filed August 9, 1989, and (3) Defendant's Motion to Dismiss, filed July 17, 1989. On January 4, 1990, this Court conducted a hearing to listen to the parties' oral arguments regarding the pending motions. Mr. Michael A. Sheely of Charlotte, North Carolina represented Plaintiff, and Mr. John O. Pollard and Mr. Grant B. Osborne of Charlotte, North Carolina represented Defendant Harris–Teeter Supermarkets, Inc. (hereafter "Defendant" or "Harris–Teeter").

After carefully considering the pending motions and briefs in support, listening to the parties' oral arguments, and reviewing the applicable law, the Court will grant Plaintiff's Motion to Amend Complaint and Second Motion to Amend Complaint. The Court, however, also will grant Defendant's Motion to Dismiss.

According to the allegations in the Complaint, Harris–Teeter initially employed Plaintiff in July 1972 and terminated Plaintiff in May 1975. In 1979, Plaintiff filed suit against Defendant under 42 U.S.C. § 1981 and Title VII. In 1982, the Court

entered a judgment in Plaintiff's favor. *See Lilly v. Harris–Teeter Supermarkets Inc.*, 545 F.Supp. 686 (W.D.N.C.1982), *aff'd*, 720 F.2d 326 (4th Cir.1983). As a result of the judgment in the 1979 civil action, on July 23, 1984, Harris–Teeter reinstated Plaintiff to employment in the position of grocery manager. After issuing a series of warnings to Plaintiff, Harris–Teeter discharged Plaintiff on February 9, 1985.

Plaintiff originally brought this action as an individual and on behalf of all others similarly situated. Plaintiff, however, has abandoned the class action aspect of this case. Plaintiff alleged that Harris–Teeter racially discriminated against him in violation of 42 U.S.C. § 1981 for the discharge from employment and for retaliation for Plaintiff's earlier, successful discrimination action. Plaintiff also brought a pendent claim for intentional infliction of emotional distress. On each of the three causes of action, Plaintiff sought damages in the amount of $750,000, including lost pay.

## I. PLAINTIFF'S MOTION TO AMEND COMPLAINT AND SECOND MOTION TO AMEND COMPLAINT

In Plaintiff's First Motion To Amend Complaint, Plaintiff seeks to add allegations regarding his discharge and retaliation claims under section 1981. In Plaintiff's Second Motion to Amend Complaint, Plaintiff wants to substitute a state claim of wrongful discharge in violation of public policy for the claim of intentional infliction of emotional distress.

■ Rule 15 of the Federal Rules of Civil Procedure provides in pertinent part that:

[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading ... within 10 days after service of the amended pleading, ... unless the court otherwise orders.

F.R.Civ.P. 15(a). Courts have interpreted Rule 15(a) liberally to grant leave to amend. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (to provide plaintiff with opportunity to test claim on merits, court should grant leave to amend, absent undue delay, bad faith, dilatory motive, or undue prejudice). Courts should grant leave to a party to amend its pleadings absent unreasonable delay, a showing of prejudice, or bad faith. *Ward Electronics Service, Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir.1987).

■ Plaintiff filed the Motion to Amend Complaint immediately after the United States Supreme Court decided *Patterson v. McLean Credit Union* and filed the Second Motion to Amend Complaint immediately after the North Carolina Supreme Court recognized in *Coman v. Thomas Manufacturing* a cause of action for an alleged wrongful discharge as against public policy. *See Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (altering scope of coverage of section 1981); *Coman v. Thomas Manufacturing*, 325 N.C. 172, 381 S.E.2d 445 (1989) (finding that discharge was against public policy because employer terminated plaintiff, who was truck driver, allegedly for refusing to violate various federal and state safety regulations). The Court believes that because of the apparent changes in the law occurring after Plaintiff filed his Complaint, Plaintiff's Motion to Amend Complaint and Second Motion to Amend Complaint should be granted.

In Plaintiff's amended claims for relief under section 1981, Plaintiff alleges now essentially that (1) white employees of Harris–Teeter who performed at Plaintiff's job level were deficient in their job performance, subsequently were demoted by Harris–Teeter, and thereafter were promoted by Harris–Teeter; (2) the demotions of white employees constituted a change in the relationship between Harris–Teeter and the employees because of different pay and job duties; (3) by demoting the white employees, Harris–Teeter made them new offers concerning contracts of employment; (4) when discharging Plaintiff, Harris–Teeter failed to make a new offer to Plaintiff; (5) by failing to make an offer to Plaintiff,

Harris–Teeter failed to follow its policy; and (6) Harris–Teeter did not make Plaintiff an offer because of his race and on account of a retaliatory motive.

## II. DEFENDANT'S MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), courts should construe the complaint in the light most favorable to the plaintiff and should accept the plaintiff's material allegations as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Moreover, courts should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Parties file a motion pursuant to Rule 12(b)(6) "to test the formal sufficiency of the statement of the claim for relief." 5 C. Wright & A. Miller, Federal Practice & Procedure, § 1356 (1969); *see Niece v. Sears, Roebuck & Co.*, 293 F.Supp. 792, 794 (N.D.Okla. 1968) (function of motion under Rule 12(b)(6) is to test law of claim, not facts to support it).

Despite the allowed amendments to the Complaint, the Court is of the opinion that Plaintiff's claim still is not actionable under section 1981 in light of the Supreme Court's decision in *Patterson v. McLean Credit Union.*

In *Patterson v. McLean Credit Union,* the Supreme Court recognized that section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts...." *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989); *see* 42 U.S.C. § 1981 (1982). The Supreme Court noted that section 1981 is restricted in its scope and forbids discrimination in the "mak[ing] and enforce[ment]" of contracts. *Patterson,* 109 S.Ct. at 2372. The Supreme Court noted, further, that when an alleged act of discrimination fails to involve the impairment of one of these specific rights, section 1981 cannot be a basis for relief.

*Id.* The *Patterson* Court then warned courts not to construe section 1981 as a general prohibition of racial discrimination in all aspects of contract relations. *Id.* The Supreme Court reasoned that section 1981 expressly prohibits discrimination only in the making and enforcement of contracts. *Id.*

The Supreme Court then explained, as follows, two of the rights protected in section 1981:

> By its plain terms, the relevant provision in § 1981 protects two rights: "the same right ... to make ... contracts" and "the same right ... to ... enforce contracts." The first of these protections extends only to the formation of a contract, but not to problems that may arise later from the conditions of continuing employment. The statute prohibits, when based on race, the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms. But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.
>
> The second of these guarantees, "the same rights ... to ... enforce contracts ... as is enjoyed by white citizens," embraces protection of a legal process, and of a right of access to legal process, that will address and resolve contract-law claims without regard to race.... It also covers wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, ... in enforcing the terms of a contract.... The right to enforce

contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights. *Id.* 109 S.Ct. at 2372–73.

In applying these principles, the Supreme Court in *Patterson* held that when allegedly racially discriminatory conduct fails to involve either a refusal to make a contract or the impairment of a person's ability to enforce established contract rights, but instead involves post-formation conduct by the employer relating to the terms and conditions of the employee's continuing employment, the employee's claim for racial discrimination is not actionable under section 1981. *Id.* at 2374. In considering the scope of section 1981's coverage, the Supreme Court stated that the critical question remained "whether the employer, *at the time of the formation of the contract,* in fact intentionally refused to enter into a contract with the employee on racially neutral terms." *Id.* at 2376–77 (emphasis in original). The *Patterson* Court recognized, then, that a plaintiff's allegation of racial harassment should not allow the plaintiff to boot-strap a challenge to the conditions of employment into a claim under section 1981 that the employer refused to offer the plaintiff the same right to make a contract. *Id.* at 2377. In a footnote, the *Patterson* Court stated that its task was not to construe section 1981 to punish all acts of discrimination in contracting in a like fashion, but rather merely to give a fair reading to the scope of the statutory terms used by Congress. *Id.* at 2377 n. 6.

In considering whether a promotion claim is actionable under section 1981, the Supreme Court in *Patterson* stated that if the nature of the change in position involves the opportunity to enter into a new contract with the employer, the employer's refusal to enter the new contract is actionable under section 1981. *Id.* at 2377. The *Patterson* Court, however, warned lower courts to give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and not to "strain in an undue manner the language of § 1981." *Id.* The Supreme Court then recognized

that a claim is actionable under section 1981 only when the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer. *Id.*

The parties have cited this Court to countless decisions of lower courts, the majority of which are unpublished, that have considered section 1981 claims in connection with *Patterson.* Having reviewed *Patterson* and these lower court decisions, the Court is firmly convinced that Plaintiff's claim is not actionable under section 1981. Harris–Teeter reinstated Plaintiff on July 23, 1984. The events about which Plaintiff complains occurred in the early part of 1985. The Court believes, therefore, that the events about which Plaintiff complains occurred after the formation of any employment contract between Plaintiff and Harris–Teeter. The Court is of the opinion that Plaintiff's claim regarding his discharge involves the conditions of his continuing employment with Harris–Teeter, rather than Plaintiff's right to make or enforce a contract. *See, e.g. Stinson v. American Sterilizer Co.,* 724 F.Supp. 868, 871 (M.D.Ala.1989) (finding that Supreme Court's decision in *Patterson* foreclosed plaintiff's claims under section 1981 regarding standards used for employee evaluations and plaintiff's discharge); *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366, 1368 (D.Colo.1989) (finding that because wrongful demotion is functionally equivalent to harassment, claim involving wrongful demotion was not actionable under § 1981); *Rivera v. AT & T Information Systems, Inc.,* 719 F.Supp. 962, 965 (D.Colo.1989) (holding that claims under § 1981 of discriminatory discharge involved post-contract formation conduct and, thus, was not actionable under § 1981); *Johnson v. United States Elevator Corp.,* 723 F.Supp. 1344, 1345 (E.D.Mo.1989) (holding that in light of *Patterson,* claim of discriminatory discharge is not actionable under § 1981); *Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552, 554 (S.D.Tex.1989) (holding that claims of racially motivated discharge were outside scope of § 1981). The Court believes that in characterizing

Plaintiff's discharge as Harris–Teeter's failure to provide Plaintiff with an opportunity to enter into a new contract with Harris–Teeter or as Harris–Teeter's failure to demote Plaintiff, Plaintiff is attempting to persuade the Court to stretch the meaning of the clear language of section 1981. The Supreme Court in *Patterson,* however, admonished the lower courts not to "strain in an undue manner the language of § 1981." *Patterson,* 109 S.Ct. 2377. In light of the Supreme Court's admonition, the Court believes that Plaintiff's contention must fail. Moreover, the Complaint, even as amended, fails to allege that upon Plaintiff's discharge, Plaintiff and Harris–Teeter discussed or entered into an employment contract or that Harris–Teeter refused an offer by Plaintiff to enter into any new employment contract.

The Court believes, furthermore, that the Complaint, as amended, fails to allege that Harris–Teeter in any way impaired Plaintiff's right to enforce by law whatever contractual rights that Plaintiff may have had. The Court is of the opinion, further, that as demonstrated by Plaintiff's presence before this Court, Harris–Teeter has not abridged Plaintiff's right to enforce any contract through legal process.

For these reasons, the Court believes that Plaintiff's amended Complaint fails to state a claim under section 1981. The Court, therefore, must grant Defendant's Motion to Dismiss in reference to Plaintiff's section 1981 claim.

In reference to Plaintiff's state law claim, pendent jurisdiction is the sole basis for this Court's jurisdiction. Under the doctrine of pendent jurisdiction, only a substantial federal question provides the Court with the power to resolve pendent state claims. *See Washington v. Union Carbide Corp.,* 870 F.2d 957, 961 (4th Cir.1989); *Delavigne v. Delavigne,* 530 F.2d 598, 601 n. 7 (4th Cir.1976); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3564, at 66 (1984). Because the Court will dismiss Plaintiff's claim under section 1981, Plaintiff's Complaint no longer will have a substantial federal question which this Court can use as a basis for its jurisdiction to consider Plaintiff's pendent state claim. The Court, therefore, must dismiss Plaintiff's state law claim.

NOW, THEREFORE, IT IS ORDERED that (1) Plaintiff's Motion to Amend Complaint, filed July 19, 1989, is hereby *GRANTED;* (2) Plaintiff's Second Motion to Amend Complaint, filed August 9, 1989, is hereby *GRANTED;* (3) Defendant's Motion to Dismiss, filed July 17, 1989, is hereby GRANTED; and (4) Plaintiff's Complaint, as amended, is hereby DISMISSED IN ITS ENTIRETY.