J. Alex NEWTON, Plaintiff,

v.

A.B. DICK COMPANY, Defendant.

Civ. A. No. MJG–89–1287.

United States District Court,
D. Maryland.

June 1, 1990.

---

Norris C. Ramsey, Baltimore, Md., for plaintiff.

Gil A. Abramson and Andrew Topping, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

GARBIS, District Judge.

In Count I of his Complaint, Plaintiff J. Alex Newton, a black male, alleges he was the victim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982).[1] Newton alleges that he was demoted from a position as "corporate account manager" and subsequently discharged from defendant A.B. Dick Company ("A.B. Dick") because of his race.

### Introduction

Newton alleges that he was hired as a copier salesman on November 11, 1986 by A.B. Dick, a corporation that provides office equipment, copy equipment and other services to the public. Complaint at 2. He was "promoted to corporate account manager on August 30, 1987, and demoted to copier salesman on February 29, 1988." *Id.* Newton alleges that he was discharged on April 29, 1988, "despite the fact that he was qualified for and was performing his job." *Id.* Newton claims that he was demoted and terminated because of his race, and that "white employees whose performance was less than the Plaintiff's performance were neither demoted nor terminated." *Id.* Newton alleges that these discriminatory acts violated Title VII, and he seeks declaratory and injunctive relief, punitive and compensatory damages, attorney fees and costs of this action, and other and further relief as the Court deems necessary. *Id.* at 3.

### Summary Judgment

■ In *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) the Supreme Court addressed in detail the analysis a court should use in considering a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[2]

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex,* 106 S.Ct. at 2552. Although the moving party bears the initial burden of informing the district court of the basis for its motion by identifying the materials which demonstrate the absence of a genu-

---

**1.** In Count II, Plaintiff alleged a violation of 42 U.S.C. § 1981. For the reasons stated in the Memorandum Opinion on Motion to Dismiss Section 1981 Claim, issued this date, 738 F.Supp. 952, Count II has been dismissed.

**2.** Summary judgment must be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Pro. 56(c).

ine issue of material fact, the moving party need not *negate* the adverse party's claim. *Id.* at 2553. The motion should be granted so long as the materials before the district court demonstrate that the standard set forth in Rule 56 is satisfied. *Id.* at 2553.

In evaluating whether a dispute about a material fact is "genuine," the court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511. This standard "mirrors" the standard for a directed verdict under Fed.R.Civ.Pro. 50(a), which is that "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 2511. In an ordinary civil case, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512.

On a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 106 S.Ct. at 2513. *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

However, Rule 56 does not relieve the non-movant of all responsibility to rebut the motion.[3] "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson,* 106 S.Ct. at 2514. For example, "The plaintiff [may] not defeat the properly supported summary judg-

ment motion of a defendant charged with conspiracy without offering 'any significant probative evidence tending to support the complaint.'" *Id.* at 2514 (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). "Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 2514.

Finally, in evaluating any motion for summary judgment the court must bear in mind that "Summary Judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 106 S.Ct. at 2555 (quoting Fed.R.Civ.Pro. 1).

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 106 S.Ct. at 2555.

Because the substantive law under which a claim is brought identifies the facts that are material to that claim,[4] it is necessary to examine the elements of a prima facie case of employment discrimination based on race. Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a)(1)

---

**3.** Rule 56(e) provides: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the

adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

**4.** Factual disputes that are irrelevant or unnecessary will not be counted. *Anderson,* 106 S.Ct. at 2510.

(1982). Essentially, Newton must show that he was demoted and discharged because he is black. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once plaintiff has demonstrated that he was treated unfairly because of his race, "the burden must then shift to the employer to articulate some legitimate, nondiscriminatory reasons" for the employee's treatment. *McDonnell Douglas,* 93 S.Ct. at 1824. Then plaintiff must be "afforded a fair opportunity to show that [the employer's] stated reason ... was in fact pretext." *Id.* at 1825. Ultimately, plaintiff bears the burden of proving his claim at trial.

*Newton's Claim*

■ A.B. Dick has satisfied its burden by citing materials to support its position that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. *See* Motion at 5–11. In response to A.B. Dick's motion, Newton asserts that his Answers to Interrogatories ("Answers") Nos. 1, 3, 4, 6 and 7 "set forth the facts upon which he relies to prove that he was demoted and terminated because of his race." Opposition at 4. But Newton's testimony at his deposition undermines every claim made in these Answers and demonstrates that he cannot offer any evidence to justify a reasonable conclusion that he was treated as he was because of his race.

Although Newton claims repeatedly in his Answers that his discharge was motivated because of his race, in three days of deposition he never alleged, much less offered credible evidence, that racial animus was the reason for his treatment. He stated that after his termination he told potential employers that "Primarily, I got fired because that's what A.B. Dick decided they wanted to do," and he also stated that was the only reason he gave. Newton Deposition ("Dep.") at 222. Similarly, when asked why he was demoted, he said, "I can't give you a reason for other people's actions." Dep. at 222.

In addition, although Newton claimed that one of his supervisors, Kenneth Romagna, had a grudge against him, Newton never indicated that Romagna treated him differently because of his race. Romagna failed to credit some sales to him, Newton alleged, because "Well, the direct answer to what you are asking is, first of all, Mr. Romagna was not overwhelmed with brotherly love for Alex Newton, and he did several little things to indicate that, you know, that that's just the way that it was." Dep. at 63. Newton says he "got on the wrong side of" Romagna, who "just did not appreciate my presence." Dep. at 147–48. Newton says Romagna may have treated him as he did because Newton was not Italian, and that Romagna once told him, "You don't have to be Italian to work here, but it helps." Dep. at 147–48.

Only once in his deposition did Newton specifically claim that he was treated as he was because of his race, and that was in connection with being charged with vacation time. His complete testimony on this point is as follows:

Q: ... is it your contention that the reason you were charged for a weeks vacation [in January, 1988] ... was because of your race?

A: At this time, yeah.

Q: On what facts do you base this contention?

A: The fact that no one else was charged.

Q: That's the only fact?

A: I have to reflect on it and refresh my memory....

Q: At this time, you don't have any further facts?

A: At this time, I have no further facts to add today.

Dep. at 220. In sum, Newton offered only bald allegations in his Answers to Interrogatories that he was demoted and discharged because of his race, and when he was given the opportunity to explain his claim and pinpoint the incidents and evidence justifying his claim, he failed to support his claim with any evidence at all. Given the evidence on the record, no reasonable jury could conclude that he was discharged because of racially-motivated discrimination.

In his Answers to Interrogatories, Newton also alleges that other similarly-situ-

ated white employees were treated more favorably than he. Newton claims that he ranked in the top 20% of the national sales force, "as completed company quota sheets for his final fiscal year rankings will verify," and that he had installed more copiers than the branch had ever installed in any fiscal year. Answer No. 1. But Newton has at no time ever produced any documentary evidence for his claims about his own performance.

Likewise, Newton has identified eight white employees whose performance, he claims, was less than his and who were neither demoted nor terminated. Answer No. 3. But when pressed at his deposition to indicate how one of these employees, Mary Kralec, was treated more favorably than he, he responded "Being a professional I would say I have no idea." Dep. at 76–77. With respect to the other employees he identified, he could not specify exactly how they were treated differently. And he finally admitted at his deposition that he had no basis for his claim that the performance of the employees he named was inferior to his:

Q: Okay. And you don't really know the production of other employees of A.B. Dick, is that a fact?

A: Primarily, yeah.

Dep. at 115. Indeed, counsel for Newton conceded at the hearing that Newton has no evidence to offer in support of his claim other than the Answers to Interrogatories, and that although Newton has had access to A.B. Dick's personnel files, these files do not show that white employees with worse performance records were treated better than he. Newton has pointed to no credible evidence that white employees were treated more favorably, and no reasonable jury could find that they had been.[5]

Newton argues that questions regarding motive and intent are particularly unsuited to disposition on summary judgment, and that summary judgment is disfavored when such questions must be answered. *See Morrison v. Nissan Company, Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *International Woodworkers of America, AFL–CIO, v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259 (4th Cir.1981). However, summary judgment is not necessarily precluded simply because one party claims, without any credible evidence to support that claim, that intent may be at issue. Summary judgment has frequently been granted in Title VII cases where, as here, "no evidence has been presented indicating that a discriminatory purpose was a motivating factor." *See* C. Wright, A. Miller & M. Kane, 10A *Federal Practice And Procedure* § 2732.2 n. 24 (1983) (citing cases).

Under the standard set forth in *Celotex*, Newton was obligated to come forward and provide evidence such that a reasonable juror could find in his favor. His failure to come forward with evidence to support an element of his claim is grounds under *Celotex* for granting summary judgment against him. Given that Newton failed to offer any credible evidence to support his claim that his race was the reason he was demoted and terminated, there is no genuine dispute of fact as to an essential element of his claim, and A.B. Dick is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment as to Count I will be granted by separate Order.

---

5. In fact, although A.B. Dick is required only to point out to the Court that summary judgment is appropriate, and is not required to negate Newton's claim, it has more than carried its burden here. In addition to pointing out that no genuine dispute of material fact exists, A.B. Dick has also submitted credible documentary evidence that the reason Newton was fired was because of his own poor sales performance and disciplinary lapses. In a letter to Newton dated April 18, 1988, Romagna, the branch manager, detailed numerous deficiencies in Newton's performance, including poor sales, poor customer development, and poor attitude. Reply Exh. 1. Newton's deposition testimony indicates he understood the nature and extent of his performance problems. *See, e.g.,* Dep. at 95–96, 100–01.