J. Alex NEWTON, Plaintiff,

v.

A.B. DICK COMPANY, Defendant.

Civ. A. No. MJG–89–1287.

United States District Court,
D. Maryland.

June 1, 1990.

Norris C. Ramsey, Baltimore, Md., for plaintiff.

Gil A. Abramson and Andrew Topping, Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

GARBIS, District Judge.

Plaintiff J. Alex Newton, a black male, alleges he was the victim of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982), and of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982). Newton alleges that he was demoted from a position as "corporate account manager" and subsequently discharged from defendant A.B. Dick Company ("A.B. Dick") because of his race. A.B. Dick has moved to dismiss Count II of the Complaint, Newton's § 1981 claim, arguing that claims of discrimination regarding conduct occurring after the formation of an employment contract, including demotion and discharge, are no longer actionable under § 1981 in light of the Supreme Court's decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

*Newton's Claim*

For purposes of this Motion to Dismiss, all allegations in Newton's Complaint are assumed to be true. *See generally* C. Wright & A. Miller, 5 *Federal Practice and Procedure* § 1368 n. 98 (1969) (citing cases). Newton alleges that he was hired as a copier salesman on November 11, 1986 by A.B. Dick, a corporation that provides office equipment, copy equipment and other services to the public. Complaint at 2. He was "promoted to corporate account manager on August 30, 1987, and demoted to copier salesman on February 29, 1988." *Id.* Finally, Newton was discharged on April 29, 1988, "despite the fact that he was qualified for and was performing his job." *Id.* Newton claims that he was demoted and terminated because of his race, and that "white employees whose performance was less than the Plaintiff's performance were neither demoted nor terminated." *Id.* Newton alleges that these discriminatory acts violated both Title VII and

§ 1981, and he seeks declaratory and injunctive relief, punitive and compensatory damages, attorney fees and costs of this action, and other and further relief as the Court deems necessary. *Id.* at 3.

*The Patterson Decision*

In *Patterson,* the Supreme Court held that § 1981[1] "does not apply to conduct after the formation of a contract and which does not interfere with the right to enforce established contract obligations." 109 S.Ct. at 2369. Discrimination after formation of the contract, "reprehensible though it be if true, is not actionable under § 1981, which covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 2374.

Of course, as the Supreme Court noted, the *Patterson* decision does not affect the ability of a victim of discrimination occurring after the formation of a contract to bring a cause of action under Title VII. As the Court stated:

> In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation. See 42 U.S.C. § 2000(e)–5(b). Only after these procedures have been exhausted, and the plaintiff has obtained a "right to sue" letter from the EEOC, may [he or] she bring a Title VII action in court. See 42 U.S.C. § 2000(e)–5(f)(1). Section 1981, by contrast, provides no administrative review or opportunity for conciliation.

*Id.* at 2374–75.

The Court noted that to the extent that there is overlap between the coverage of § 1981 and Title VII, the "detailed and well-crafted procedures for conciliation and resolution of Title VII claims" would be undermined if a claimant could circumvent them simply by bringing a § 1981 claim. *Id.* at 2374. Although there is indeed some overlap, for example with regard to discrimination in hiring, the Court was unwilling to interpret § 1981 to overlap Title VII with regard to discrimination relating to the conditions of employment. Thus, because Patterson's claim of racial harassment related "not to her employer's refusal to enter into a contract with her, but rather to the conditions of her employment," her claim was not actionable under § 1981. *Id.* at 2377.

*Termination*

■ In *Patterson,* the Supreme Court did not address the question whether discrimination in termination remained within the coverage of § 1981.[2] However, the great majority of courts that have addressed this issue since *Patterson* have held that § 1981 does not apply to such conduct. *See Overby v. Chevron USA, Inc.,* 884 F.2d 470 (9th Cir.1989) (grant of summary judgment upheld; claim of retaliatory discharge not actionable under § 1981 because discharge did not implicate rights to make or enforce contract); *Greggs v. Hillman Distrib. Co.,* 719 F.Supp. 552, 554 (S.D.Tex.1989) (motion to dismiss granted on § 1981 claim because "claims of racially motivated discharge, without more, are outside the scope of § 1981"); *Hall v. County of Cook, State of Illinois,* 719 F.Supp. 721, 724 (N.D.Ill.1989) (motion to dismiss granted on § 1981 claim because "plaintiff's discharge from employment is beyond the scope of § 1981 as construed in *Patterson* "); *Rivera v. A.T. & T. Information Sys., Inc.,* 719 F.Supp. 962, 965 (D.Colo.1989) (Babcock, J.) (summary judgment granted on § 1981 claim because "discriminatory discharge occurs

---

1. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

2. In *Patterson,* the trial court had submitted to the jury a § 1981 claim based on an alleged discriminatory discharge. The jury found for the defendant credit union in this claim, making the issue moot on appeal.

after the commencement of the employment relationship and does not affect the employee's right to make or enforce contracts"); *Malekian v. Pottery Club of Aurora, Inc.*, 724 F.Supp. 1279 (D.Colo.1989) (Babcock, J.) (motion to dismiss granted for same reasons); *Crader v. Concordia College*, 724 F.Supp. 558, 562 (N.D.Ill.1989) (claim under § 1981 for race-based discharge is "expressly barred" by *Patterson*).

Although most courts have viewed *Patterson* in this way, some courts have held that § 1981 still applies to discrimination in termination of employment. For example, in *Padilla v. United Air Lines*, 716 F.Supp. 485 (D.Colo.1989) (Arraj, J.) the court denied a motion to amend judgment or for a new trial on plaintiff's § 1981 claim for racially motivated discharge.[3] Citing in support of his view the Fourth Circuit decision that was reviewed by the Supreme Court in *Patterson*[4] and an Eleventh Circuit decision that predated *Patterson*,[5] Judge Arraj held that "termination is part of the making of a contract.... Termination affects the existence of the contract, not merely the terms of its performance. Thus, discriminatory termination directly affects the right to make a contract contrary to § 1981." *Id.* at 490. *See also Birdwhistle v. Kansas Power and Light Co.*, 723 F.Supp. 570 (D.Kan.1989) (motion for summary judgment on § 1981 discriminatory discharge claim denied because "discharge is directly related to contract enforcement and thus is still actionable under section 1981 in light of *Patterson*.")

Because counsel for Newton has conceded that Newton's claim for discrimination in termination is no longer cognizable under § 1981, this Court is not required to decide that specific issue. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") at 1. Nevertheless, it is appropriate to register this Court's disagreement with the *Padilla* and *Birdwhistle* decisions. Accordingly, this Court concludes that in view of the Supreme Court's decision in *Patterson*, § 1981 applies to claims of racial discrimination in the *making* or *enforcement*, but not in the *termination* of contracts.

*Demotion*

▪ Newton has not abandoned his position that claims of discriminatory demotion remain covered under § 1981. The Supreme Court in *Patterson* did not discuss demotions. The Court did note that discrimination in *promotions* may be actionable, but "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." *Patterson* 109 S.Ct. at 2377.

Newton contends that his demotion remains actionable because "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." Opposition at 2. However, this Court notes that, where in a claim for discrimination in promotions the new contract (employment at a higher level) is being *denied* on the basis of race, here the new contract (i.e. employment at a lower level) was in fact *offered* to the claimant. Indeed, it is this very action which is the basis of the Plaintiff's complaint in the demotion claim.

Plaintiff seems to be arguing that the alleged discrimination lies in the failure of the employer to continue him in the higher position and that this somehow transmogrifies an alleged discriminatory demotion into an opportunity to "make" a contract. Whatever merit (if any at all) this contention may have, it is far more logical to view a demotion as a change in the terms of a continuing employment relationship rather than the beginning of a new one. The

---

**3.** The case was tried to the court on May 22 and 23, 1989. The parties filed post-trial briefs and oral argument was heard on June 5, 1989. Judgment was entered on June 14, 1989 in favor of plaintiff. The *Patterson* decision was announced June 15, 1989. After each party filed a post-trial motion, Judge Arraj issued his ruling on July 5, 1989.

**4.** *Patterson v. McLean Credit Union*, 805 F.2d 1143 (4th Cir.1986).

**5.** *Vance v. Southern Bell Tel. & Tel. Co.*, 863 F.2d 1503 (11th Cir.1989).

Supreme Court has stated that postformation conduct,

> including breach of the terms of the contract or imposition of discriminatory working conditions[,] ... does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law and Title VII.

*Patterson,* 109 S.Ct. at 2373. This pronouncement appears perfectly applicable to the demotion of an employee.

Although I am not aware of any court in the Fourth Circuit having addressed the issue,[6] district courts elsewhere have held that discrimination in demotions is no longer actionable under § 1981. In *Jordan v. U.S. West Direct Co.,* 716 F.Supp. 1366 (D.Colo.1989), Judge Carrigan held that "in the case of an alleged wrongful demotion, as opposed to a failure to promote, there is no refusal by the employer to enter into a new contract with the employee. Wrongful demotion allegations are thus included in racial harassment at the workplace." *Id.* at 1368. In *Alexander v. New York Medical College,* 721 F.Supp. 587 (S.D.N.Y. 1989) the court noted that courts construing *Patterson* "uniformly have rejected attempts to redress discriminatory discharges and demotions ... under § 1981." *Id.* at 587–88 (citing cases). "Demotions and retaliatory discharges both take place *after* the initial employment contract is made. Therefore, they do not implicate the process of making an employment contract." *Id.* at 588.

For the reasons expressed, I hold that an alleged discriminatory demotion, evil though such an action is, does not involve discrimination in the enforcement of contracts, nor does it implicate any impediment to access to the legal process to enforce contractual rights. Therefore, discrimination in demotions does not fall within § 1981. In view of the Supreme Court's

decision in *Patterson,* even if Newton's demotion were, as he claims, from a managerial position to a non-managerial position, a change in position that, in reverse, could be actionable under *Patterson* if the claim related to a failure to promote, it would not give rise to a claim of discrimination cognizable under § 1981.

For the foregoing reasons, A.B. Dick's motion to dismiss Count II of Newton's complaint will be granted by separate Order.

---

**6.** In *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908 (4th Cir.1989) the Fourth Circuit addressed a § 1981 claim asserting a discriminatory failure to promote. The court adopted the language quoted from *Patterson* regarding the standard to be used in addressing such a claim, *see supra* at 955, and held that "promotion from clerk to supervisor with a consequent increase in responsibility and pay satisfies this test." *Id.* at 910.