Jeannette FRAZIER, Carolyn Rhinehart, Hudolphus Delaney, and Clayton Cuthbertson, Plaintiffs,

v.

FIRST UNION NATIONAL BANK, a bank, Defendant.

No. C–C–89–257–P.

United States District Court, W.D. North Carolina, Charlotte Division.

Oct. 2, 1990.

Michael A. Sheely, Blum & Sheely, Charlotte, N.C., for plaintiffs.

Francis C. Clark, First Union National Bank of N.C., Edward T. Hinson, Jr., James McElroy & Diehl, Charlotte, N.C., J. Thomas Kilpatrick, Smith Currie & Hancock, Atlanta, Ga., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's motions, filed June 18, 1990 and August 7, 1990, for partial summary judgment.

## I. PROCEDURAL BACKGROUND.

Plaintiffs, black former and current employees of Defendant, filed this action on June 9, 1989. The named Plaintiffs also sought class certification for those persons similarly situated. On August 10, 1989, the Court denied without prejudice Plaintiffs' motion for class certification. The Court entered a second order on January 8, 1990 denying Plaintiffs' request for class certification. The case, thereafter, has proceeded on behalf of the four (4) named Plaintiffs alone.

Because of the United States Supreme Court case of *Patterson v. McLean Credit Union,* Plaintiffs sought leave of Court to file an amended complaint. That request was granted by the Court and Plaintiffs filed an amended complaint on January 11, 1990.

Defendant filed a motion on June 18, 1990 for summary judgment on all of the § 1981 claims, on some of the Title VII claims, and the state pendant jurisdiction claim of wrongful discharge in violation of public policy. On August 3, 1990, Plaintiffs filed a response to Defendant's motion for partial summary judgment. Defendant filed a reply on August 20, 1990 to Plaintiffs' response.

Additionally, Defendant filed a second motion on August 7, 1990 seeking partial summary judgment on the remaining state pendant jurisdiction claims of intentional infliction of emotional distress. Plaintiffs responded on September 10, 1990.

On September 17, 1990, the Court conducted a hearing to receive arguments from the parties. Mr. Michael A. Sheely, Esquire of Charlotte, North Carolina was present to represent Plaintiffs. Defendants were represented by Mr. J. Thomas Kilpatrick, Esquire and Mr. Paul Beshears, Esquire of the firm of Smith, Currie & Hancock, located in Atlanta, Georgia. Defendant's local counsel, Mr. Edward T. Hinson, Jr. of the firm of James, McElroy & Diehl, was also present at the hearing.

## II. JURISDICTION.

Plaintiffs contend without dispute that this matter is properly before the Court on the following jurisdictional grounds:

28 U.S.C. §§ 1331 and 1343(a)(3) (§ 1981 claims); 42 U.S.C. § 2000e–5(f) (Title VII claims); and the doctrine of pendant jurisdiction (state law claims of discharge in violation of public policy and intentional infliction of emotional distress).

## III. FACTUAL BACKGROUND.

First Union National Bank (hereinafter "Defendant") is a financial institution with offices in Mecklenburg County, North Carolina. All four (4) Plaintiffs are black former or current employees of Defendant. There appears to be no genuine issue of material fact in dispute regarding the following facts.

### A. *Jeannette Frazier.*

Frazier was hired by Defendant as a secretary on November 26, 1979. Her responsibilities included operating the switchboard and typing. In June or July, 1980, Frazier was promoted to the position of bankruptcy assistant. Frazier became a fiscal bond agency assistant in the Capital Management Department in 1983. Later in 1983, Frazier received a posted secretarial position to support the Business Development Section within the Training and Development Group.[1] The duties of this position included typing, filing and paying invoices.

In June, 1986, Allison Lambert, a white employee in the same department as Frazier, had her previous position of Secretary A expanded to the position of Program Coordinator because of increased volume in the department. In the complaint, Plaintiffs contend that Frazier was interested in a Program Coordinator position and had made her interest known to Defendant. The position was not posted because Defendant treated the position as an expansion rather than a vacancy.

Thereafter, a position for Secretary A in the Training and Development Department that interested Frazier became available. After Jill Flynn, Vice President of Training and Development, informed Frazier that the position was non-management, boring, and unattractive, Frazier opted not to post for the position. Ultimately, Linda Hartsell was hired for the position on February 23, 1987 and Frazier filled the position of Program Coordinator that had since been vacated by Allison Lambert. The Program Coordinator position carried a higher grade level than the Secretary A position, although Hartsell's responsibilities and pay were increased four months after Hartsell assumed the position. Hartsell's position then became equivalent to that of an Office Administrator.

On March 8, 1988, Frazier filed a charge of racial discrimination with the EEOC. The charge alleged that Defendant had discriminated against her by failing to consider her for the position of Program Coordinator that was filled by Lambert. The charge also alleged that white secretaries were compensated at a higher rate than Frazier. Frazier also claimed that the failure of Defendant to give her the Secretary A position that was subsequently expanded to the position of Office Administrator was

---

**1.** It is Defendant's practice to permit current employees to apply for vacant positions. The practice is known as "posting".

discriminatory. Frazier further claimed that Defendant reassigned employees working under her, thus constituting a demotion from Program Coordinator.

A second charge of discrimination was filed by Frazier with the EEOC on May 19, 1988 claiming that Defendant retaliated against her for filing the first charge. Frazier claimed that Defendant failed to conduct her annual performance evaluation in a timely fashion. After the evaluation was completed, Frazier alleged that she received a sub-standard review and that she was harassed by Hartsell.

### B. *Carolyn Rhinehart.*

Rhinehart was hired by Defendant on January 31, 1972. She held various analyst positions until 1986. Each of the positions held by Rhinehart were non-supervisory. After a leave of absence for medical reasons in 1986, Rhinehart returned to Defendant's employ and at her request was transferred from the position of Batch Proof Supervisor to the position of Operations Analyst. The transfer was considered by Defendant as a lateral move in the same pay grade.

In March, 1988, Rhinehart applied for a position as a Training Analyst in the Training and Development Department. A white employee, Karen Cox Fowler, was selected for the position. Several months later, Fowler vacated the position and was replaced by Michael T. Burleson, another white employee. The Training Analyst position was in the same pay grade as Rhinehart's position as an Operations Analyst.

On March 26, 1988, Rhinehart filed a charge of racial discrimination with the EEOC. Rhinehart charged that Defendant discriminated against her by failing to promote her to the position of Training Analyst. She also alleged that Defendant promoted three white persons over her to the position of Senior Technical Writer Analyst. Rhinehart further alleged that she was denied a raise in November, 1986 based on her race when she returned to work as an Operations Analyst.

### C. *Hudolphus Delaney.*

Delaney has been employed by Defendant for over twenty (20) years in various positions. In October, 1979, Delaney was a Data Entry Supervisor for Defendant. Delaney requested an upgrade on several occasions. That request was denied each time although a white employee did receive an upgrade to that position in 1983. In 1983, 1984, and 1985, Delaney posted for the position of Control Supervisor. The position was eventually given to a white employee.

On August 24, 1988, Delaney posted for the position of Merchant Service Supervisor. Defendant's personnel representative determined that Delaney lacked the necessary skills for that position. Thereafter, that position was filled by a white employee.

Delaney filed a charge of discrimination with the EEOC on October 3, 1988 claiming that Defendant retaliated against him for opposing discriminatory employment practices. According to Delaney, the basis of the retaliation was a Title VII lawsuit that he filed in 1970. In November, 1988, Delaney's annual performance review was negative in that Delaney had failed to meet expectations. After the review, Delaney filed another charge of racial discrimination with the EEOC alleging that the poor performance evaluation was in retaliation for the EEOC charge of October 3, 1988.

In 1989, Defendant decided to eliminate positions in the department in which Delaney was employed. Delaney was offered the choice of a job with a lower grade level or displaced status. On February 27, 1989, Delaney filed another discrimination charge with the EEOC alleging that Defendant's action of threatening displacement and failing to place him in a suitable position amounted to retaliation. Ultimately, Delaney accepted a position at a lower grade, but his level of compensation was not reduced.

### D. *Clayton Cuthbertson.*

Defendant hired Cuthbertson on April 27, 1987 as a Systems Engineer in the

Systems Support Department of the Automation Division.

Cuthbertson filed a charge of racial harassment with the EEOC on August 29, 1988. Cuthbertson alleged that his white supervisor, Robert Zimmerman, cursed him, told him that he should leave Defendant's employ, denied him training, delayed his review and then gave him an inaccurate negative review, denied him a raise, and denied him a promotion.

On October 31, 1988, Cuthbertson was terminated. According to Defendant, he failed to report to work on October 29, 1988 to help perform the conversion of Defendant's entire banking system. Thereafter, Cuthbertson filed a second charge with the EEOC on November 1, 1988 alleging that Defendant had fired him in retaliation for filing the first racial discrimination charges.

### E. Causes of Action.

Plaintiffs' claims are listed as 18 causes of action (COA). Those claims can be summarized as follows:

| COA | PLAINTIFF | DISCRIMINATORY ACT | STATUTE | DATE |
|---|---|---|---|---|
| 1. | Frazier | Fail to promote (prog coor) | 1981 | 6–86 |
| 2. | Frazier | Deny equal pay | 1981 | '83 |
| 3. | Frazier | Fail to promote (office ad) | 1981;T–VII | 11–87 |
| 4. | Frazier | Retaliation | 1981;T–VII | 3–88 |
| 5. | Frazier | Inflict emotion distress | NC143–422.2 | n/s |
| 6. | Rhinehart | Fail to promote (analyst) | 1981;T–VII | 3–88 |
| 7. | Rhinehart | Fail to promote (writer) | 1981;T–VII | 11–87 |
| 8. | Rhinehart | Deny raise | 1981 | 11–86 |
| 9. | Rhinehart | Inflict emotion distress | NC143–422.2 | n/s |
| 10. | Delaney | Fail to promote (merch-sup) | 1981;T–VII | '88 |
| 11. | Delaney | Fail to promote (control-sup) | 1981;T–VII | 85;87;88 |
| 12. | Delaney | Fail upgrade job | 1981;T–VII | 3–88 |
| 13. | Delaney | Retaliation (review/raise) | 1981;T–VII | 11–7–88 |
| 14. | Delaney | Retaliation (threaten job) | 1981;T–VII | 1–27–87 |
| 15. | Delaney | Inflict emotion distress | NC143–422.2 | n/s |
| 16. | Cuthbertson | Racial Harass (Zimmerman) | 1981;T–VII | n/s |
| 17. | Cuthbertson | Retaliation (discharge) | 1981;T–VII | 10–88 |
| 18. | Cuthbertson | Inflict emotion distress in violation of public policy (discharge) | NC143–422.2 | n/s |

## IV. APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. See Rule 56(c) of the Federal Rules of Civil Procedure. The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); see F.R.Civ.P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences from the facts in light most favorable to the party opposing the motion for summary judgment. Matsushita, 475 U.S. at 587–88, 106 S.Ct. at 1356–57; United States v. Diebold, Inc., 369 U.S. 654,

655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). When, however, the evidence from the entire record could not lead a rational factfinder to find for the non-moving party, no genuine issue for trial exists and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## V. MOTIONS FOR SUMMARY JUDGMENT.

### A. *42 U.S.C. § 1981.*

Defendant claims that each of Plaintiffs' claims brought under § 1981 are invalid under the recent United States Supreme Court case of *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In that case, the Supreme Court held that section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts...." *Id.* 109 S.Ct. at 2372; *see* 42 U.S.C. § 1981 (1982). The Supreme Court noted, then, that section 1981 is restricted in its scope and forbids discrimination in the "mak[ing] and enforce[ment]" of contracts. *Patterson*, 109 S.Ct. at 2372. The Supreme Court noted, further, that when an alleged act of discrimination fails to involve the impairment of one of these specific rights, section 1981 cannot be a basis for relief. *Id.* The *Patterson* Court then warned that courts should not construe section 1981 as a general prohibition of racial discrimination in all aspects of contract relations, because section 1981 expressly prohibits discrimination only in the making and enforcement of contracts. *Id.*

In particular, the Supreme Court in *Patterson* considered Patterson's claim that by failing to *promote* Patterson because of race, McLean violated section 1981. *Id.*

The Supreme Court noted that in stating that claims of racially discriminatory promotion go to the very existence and nature of the employment contract and thus fall easily within § 1981's protection, the Fourth Circuit in *Patterson* overstated the case. *Id.; see Patterson v. McLean Credit Union*, 805 F.2d 1143, 1145 (4th Cir.1986). The Supreme Court acknowledged that the question whether a promotion claim is actionable under section 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. *Patterson*, 109 S.Ct. at 2377. The Supreme Court stated that if the nature of the change in position involved the opportunity to enter into a new contract with the employer, the employer's refusal to enter the new contract is actionable under section 1981. *Id.* The *Patterson* Court then warned lower courts to give a fair and natural reading to the statutory phrase "the same right ... to make ... contracts," and not to "strain in an undue manner the language of § 1981." *Id.* The Court then recognized that a claim is actionable under section 1981 only when the promotion rises to the level of an opportunity for a new and distinct relationship between the employee and the employer. *Id.*

Defendant contends that the *Patterson* case limits § 1981 actions to only those instances where the formation of a contract is at issue. In this case, Defendant asserts that Plaintiffs' complaint only alleges post-contract conduct. Accordingly, Defendant urges that the Court grant the motion for summary judgment. The arguments for each cause of action are listed below.[2]

---

**2.** In the alternative to Plaintiffs' arguments stated herein, Plaintiffs urge that the Court delay its ruling until after the outcome of the Kennedy–Hawkins bill, named the Civil Rights Act of 1990, is determined. The bill, which has passed the Senate, has the effect of overruling *Patterson v. McLean Credit Union*. Although Plaintiffs acknowledge that it is likely that President Bush will veto the bill unless language is changed to eliminate the possibilities of quotas, Plaintiffs believe that passage of the bill would render Defendant's arguments moot since the bill has a retroactive application date.

Plaintiffs argue that the Court would have to reinstate claims if it granted Defendant's motion for summary judgment. Therefore, Plaintiffs contend that the best use of time and resources would be to wait until the final outcome of the bill has been determined.

The Court believes that it should apply the law currently in effect rather than what the law might become. Plaintiffs' counsel conceded at the hearing of this matter that it is anyone's guess what the outcome of the Kennedy–Hawkins bill might be. Plaintiffs' counsel further conceded that no one, including Congress itself,

### 1. Inadequate Pay.

■ Part or all of Plaintiffs' claims in causes of action 2, 4, 8, 12, 13, and 16 allege that Defendant discriminated against Plaintiffs by paying them less than similarly situated white employees. Plaintiffs believe that these actions deprived them of opportunities to enter into new contracts with Defendant or amounted to Defendant offering them new contracts.[3]

Defendant asserts that the Supreme Court in *Patterson* concluded that a denial of a wage increase is not actionable under § 1981. Plaintiffs contend that the Court in *Patterson* held that only racial harassment claims are unactionable under § 1981.

It appears from the language of *Patterson* that Defendant's position is persuasive. Justice Kennedy stated:

> Petitioner also alleges that she was passed over for promotion, not offered training for higher level jobs, and denied *wage increases,* all because of her race. With the exception perhaps of her claim that respondent refused to promote her to a position as an accountant, *none of the conduct which petitioner alleges as part of the racial harassment against her involves either a refusal to make a contract with her or the impairment of her ability to enforce her established contract rights.* Rather, the conduct which petitioner labels as actionable racial harassment is postformation conduct by the employer relating to the terms and conditions of continuing employment. *Id.* 109 S.Ct. at 2373–74 (emphasis added).

By stating "[W]ith the exception perhaps of her claim that respondent refused to promote her", it is apparent that Justice

Kennedy intended to include all listed conduct (with the exception of failure to promote) as post-contract employer conduct. Therefore, the Supreme Court has specifically held that the denial of wage increases are unactionable under § 1981. *Id.* at 2374; *see also Greggs v. Hillman Distributing Co.,* 719 F.Supp. 552, 554 (S.D.Tex. 1989) (Defendant's motion to dismiss for failure to state claim brought pursuant to Rule 12(b) of the Federal Rules of Civil Procedure granted where § 1981 action based on failure to promote and denial of pay raise); *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49, 52 (D.D.C.1989).

Accordingly, the Court concludes that summary judgment is appropriate as to Plaintiffs' § 1981 claims alleging inadequate pay.

### 2. Demotion.

■ Plaintiffs' third and fourth cause of actions allege that Defendant demoted Frazier by changing her duties and removing her supervisory duties. Plaintiffs contend that such action by Defendant constituted a new contract with Frazier, and is thus actionable under § 1981.

In a recent case, a court found that a claim of discriminatory demotion does not involve discrimination in the enforcement of contracts and therefore, does not fall within the purview of § 1981. *See Newton v. A.B. Dick Co.,* 738 F.Supp. 952, 955 (D.Md.1990). In that case, the plaintiff, a black male, alleged that he was demoted from a position as "corporate account manager" and subsequently discharged because of his race. *Id.* at 954–955. The court concluded that in view of *Patterson,* § 1981 applies to claims of racial discrimi-

---

knows when the outcome of the bill will be determined. Accordingly, the Court believes that it must apply *Patterson* to this case.

**3.** Plaintiffs have attempted to bring each § 1981 claim within those discriminatory acts prohibited by *Patterson* by arguing that Plaintiffs' original contract did not encompass Defendant's discriminatory conduct. According to Plaintiffs, each time Defendant committed a discriminatory act, a new contract was formed. Thus, Plaintiffs contend that the § 1981 claims are actionable.

Plaintiffs' counsel attempted to make the same argument before this Court in the case of *Gregory v. Harris–Teeter Supermarkets, Inc.,* 728 F.Supp. 1259, 1263 (W.D.N.C.1990). The Court rejected the argument in that case by stating, "Plaintiff is attempting to persuade the Court to stretch the meaning of the clear language of section 1981." The Supreme Court in *Patterson,* however, admonished the lower courts not to "strain in an undue manner the language of § 1981". *Id.* (citation omitted).

nation in the *making or enforcement*, but not in the *termination* of contracts. *Id.* at 954. Accordingly, the court granted the defendant's motion to dismiss the § 1981 claim based on the demotion and subsequent termination of plaintiff.

The holding in *Newton* that § 1981 is inapplicable to demotion and termination claims appears to be the majority rule. *See id.* at 953–54 (citing extensive case law); *see also Overby v. Chevron USA, Inc.*, 884 F.2d 470 (9th Cir.1989); *Williams*, 716 F.Supp. at 51 (defendant's act of downgrading her position from "manager" to "chief" not actionable § 1981 action, nor can defendant's act be characterized as a "refusal" to enter into a "new" contract).

Therefore, the Court believes that Defendant's motion for summary judgment on Plaintiffs' causes of action 3 and 4 as those claims pertain to § 1981 is meritorious.

### 3. Termination.

■ In Plaintiffs' cause of action 17, Plaintiffs allege that the termination of Cuthbertson's employment was a result of racial discrimination. Plaintiffs contend that the termination of Cuthbertson affected the existence of his contract with Defendant in that Cuthbertson wanted his former job back with Defendant. Defendant's policy is not to rehire fired persons. Thus, Plaintiffs argue that Defendant's actions impaired Cuthbertson's ability to make a second employment contract with Defendant.

Support for Plaintiffs' position is found in the Eighth Circuit case of *Hicks v. Brown Group, Inc.*, 902 F.2d 630 (8th Cir.), *reh'g and reh'g en banc denied*, 1990 WL43055, 1990 U.S. App. LEXIS 9543 (8th Cir.1990). In that case, the court held that a claim for discriminatory discharge is cognizable under § 1981 even after *Patterson. Id.* at 635.[4] The court concluded that the Supreme Court in *Patterson* did not specifically overrule previous case law involving the applicability of § 1981 to discharge claims. *Id.* at 642. Therefore, the court refused to infer that discharge from employment is not cognizable under § 1981.

The holding in *Hicks* directly contradicts a recent Fifth Circuit case. *See Walker v. South Central Bell Telephone Co.*, 904 F.2d 275, 276 (5th Cir.1990) (holding that discharge allegation fails to state a claim in § 1981 action since such an allegation involves post-contract conduct). Moreover, this Court has recently held that a retaliatory discharge claim is not actionable under § 1981. *See Gregory v. Harris–Teeter Supermarkets, Inc.*, 728 F.Supp. 1259, 1262 (W.D.N.C.1990); *see also Newton*, 738 F.Supp. at 754; *White v. Federal Express Corp.*, 729 F.Supp. 1536, 1544 (E.D.Va.) (providing that after *Patterson*, post-contract formation work place harassment and disparate treatment claims (including dis-

---

**4.** The court in *Hicks* (as well as Plaintiffs in this case) relied on the Supreme Court case of *Lytle v. Household Manufacturing*, — U.S. —, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990). In that case, the respondent argued that the Supreme Court's decision in *Patterson* was inapplicable to a § 1981 discharge claim. The Supreme Court refused to address that issue because it had not granted *certiorari* on that question. The Supreme Court stated:

> The argument that the allegations of discriminatory discharge and retaliation did not concern conduct within the scope of § 1981 as defined by *Patterson*, however, was not presented to either court below, nor is it supported by arguments in the record. We therefore find nothing in the record to justify affirming the Fourth Circuit's judgment on the ground that Lytle has not stated a cause of action under § 1981.... On remand, the *Fourth Circuit should consider the impact of Patterson on Lytle's § 1981 claims. Id.* at 1336, note 3.

According to Plaintiffs, this language, along with the holding in *Patterson* that did not disturb the Fourth Circuit's holding that discharge necessarily affects the nature and existence of a contract, indicates that the Supreme Court in *Patterson* intended to leave open the question of whether discharge is actionable under § 1981. Plaintiffs further cite several opinions, many of those opinions being unpublished, supporting their proposition that § 1981 still covers discharge.

This Court has once before rejected the same argument promulgated by Plaintiffs' counsel. *See Gregory v. Harris–Teeter Supermarkets, Inc.*, 728 F.Supp. 1259, 1260 (W.D.N.C.1990). Nonetheless, Plaintiffs argue that this Court's decision in *Gregory* was flawed and should be reconsidered. This Court does not stand alone in its rejection of Plaintiffs' argument. *See White*, 729 F.Supp. at 1544–55 (citing case law).

charge claims) that do not involve contract enforcement or promotion remain actionable under Title VII but not § 1981).

Other courts have also entered recent orders that support this Court's conclusions in *Gregory* and reject the holding of *Hicks. See generally Shuman v. General Motors Corp.*, 914 F.2d 258 (6th Cir.1990); *Gonzalez v. Homes Insurance Co.*, 909 F.2d 716 (2d Cir.1990); *Reeves v. MCI Telecommunications Corp.*, 909 F.2d 144 (5th Cir.1990); *McKnight v. General Motors Corp.*, 908 F.2d 104, 53 Fair Empl. Prac. Cas. (BNA) 505 (7th Cir.1990); *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845 (9th Cir.1990); *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805 (5th Cir.1990).

Because of the vast amount of case law finding discharge claims are not cognizable under § 1981, the Court believes that summary judgment is appropriate on Plaintiffs' § 1981 claim involving an alleged discriminatory termination.

#### 4. Retaliatory Discrimination.

In causes of action 4, 6, 7, 11, 12, 13, 14, 16, and 17, Plaintiffs allege that conduct committed by Defendant's employees was in retaliation for Plaintiffs choosing to exercise their rights not to be victims of racial discrimination.

It appears well settled that courts have treated retaliatory conduct as post-contract conduct that is not actionable under § 1981. *See Gregory*, 728 F.Supp. at 1259; *see also Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.1990); *Overby*, 884 F.2d at 473; *Rathjen v. Litchfield*, 878 F.2d 836 (5th Cir.1989). Therefore, the Court will grant Defendant's motion for summary judgment of the § 1981 claims alleging retaliatory discrimination.

#### 5. Racial Harassment.

In cause of action 16, Plaintiffs contend that Defendant's employee Zimmerman cursed Cuthbertson, told Cuthbertson that he should leave, denied Cuthbertson training, delayed Cuthbertson's review, de-

nied Cuthbertson a raise, and promoted a less qualified white employee over Cuthbertson. Defendant asserts that such a claim amounts to racial harassment which is no longer an actionable § 1981 claim under *Patterson.* Plaintiff contends that no claim explicitly alleges "racial harassment".[5]

The Supreme Court in *Patterson* held that racial harassment conduct that occurs postformation of the contract is not actionable under § 1981. *Patterson*, 109 S.Ct. at 2374. This Court believes that summary judgment is appropriate for the portions of the cause of action alleging racial harassment. Because the Court has found that summary judgment is also appropriate for those claims alleging inadequate pay, Plaintiffs' argument that evidence of harassment is relevant for purposes of proving that claim is moot. Accordingly, the Court will grant Defendant's motion for summary judgment on cause of action 16 as it relates to allegations of racial harassment in violation of § 1981.

#### 6. Failure to Promote.

The Supreme Court in *Patterson* held that "the question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer". *Id.* at 2377. The test for determining whether a new contract would exist is determined by examining if the promotion opportunity provides a "new and distinct relation" between the employee and the employer. *Id.*

The Supreme Court warned in *Patterson* that lower courts should give "a fair and natural reading to the statutory phrase 'the same right to make contracts' and should not strain in an undue manner the language of § 1981". *Id.* Despite this admonition, the Fourth Circuit in *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908 (4th Cir.1989) held that clerks

---

**5.** Plaintiffs state in their response that cause of action 16 is not a racial harassment claim, but an aspect of the inadequate raise claim. Plaintiffs believe that evidence of other events is admissible for purposes of the Title VII claim in cause of action number 16, even if there is no § 1981 liability.

denied promotions to supervisory positions had an actionable claim under § 1981. The Fourth Circuit, in a cursory fashion, stated that a "[c]onsequent increase in responsibility and pay satisfies this test". *Id.* at 910; *but see White*, 729 F.Supp. at 1545 (commenting that *Mallory* does not provide elaborate criteria for applying *Patterson* promotion test).

Naturally, Plaintiffs contend that the Fourth Circuit has determined that a *Patterson* promotion situation is present as long as the position to which the employee would be promoted involves an increase in pay and responsibility. As Defendant notes, such a reading of *Patterson* very well might "strain in an undue manner the language of § 1981". Defendant cites extensive case law which holds that in order for the promotion opportunity to provide a "new and distinct" relationship, the promotion must have resulted in substantial and significant changes in the employees' overall job function, responsibilities, methods of evaluation, and method and amount of compensation. *See Defendant's Brief of June 18, 1990,* at 26.

In a well-reasoned recent decision, Judge Ellis of the Eastern District of Virginia, suggested that focusing on the "job duties or responsibilities" of the promotion is not useful in determining whether the test has been satisfied. *White*, 729 F.Supp. at 1545. Instead, the court should determine whether the terms of the contractual relationship between the employee and the employer would change. *Id.* (citing *Malhotra v. Cotter & Co.*, 885 F.2d 1305 (7th Cir.1989)). The court specifically rejected including lateral transfers that merely involve new duties without significant changes in responsibilities and pay within the test definition. *Id.* at 1546. Accordingly, the court held that a claim by a plaintiff that he had been denied a promotion from courier to dispatcher was not actionable under § 1981. *Id.; see also Greggs*, 719 F.Supp. at 552.

Plaintiffs claim that Frazier (causes of action 1 and 3), Rhinehart (causes of action 6 and 7), and Delaney (causes of action 10 and 11) were denied promotions in violation of § 1981. A discussion of each of the promotions follows.

### a. *Frazier.*

Frazier contends that she was denied a promotion in June, 1986 as a Program Coordinator that was subsequently awarded to a white employee, Allison Lambert. Frazier also claims that she was denied the position of Secretary A which was awarded to another white employee, Linda Hartsell, in early 1987. Both promotion opportunities are discussed below.

#### (1). Program Coordinator.

In June, 1986, Defendant selected Lambert to fill the position of Program Coordinator. Defendant claims that the position was not vacant. Instead, Defendant contends that Lambert's previous position as a Secretary A was expanded. Therefore, Defendant believes that Frazier has failed to show that a promotion opportunity was available. *See Defendant's Brief of June 18, 1990,* at 30, note 8; *but see Amended Complaint filed January 11, 1990* at Plaintiffs' exhibit 1-1 (EEOC charge form stating Frazier had been promised position if it became available).

Defendant claims that a review of the Secretary A position (Frazier's position) and the Program Coordinator position indicates both of the positions had similar responsibilities and pay rates. Plaintiffs assert that the Program Coordinator position contained additional responsibilities including the supervision of one employee.

The Court agrees with Defendant that Plaintiffs' claim is suspect because the Program Coordinator position was not vacant. Instead, Lambert's position as a Secretary A was expanded. The Court believes that Plaintiffs "strain in an undue manner the language of § 1981" by claiming that a promotional opportunity existed when there was not a vacancy available for the position. Accordingly, the Court concludes that Frazier was not denied a promotion in violation of § 1981 because the Program Coordinator position was not available.

Even assuming that a promotional opportunity existed, the Court believes that the record indicates the jobs were for the most

part clerical in nature. Admittedly, the position of Program Coordinator had some additional responsibilities including the supervision of one (1) employee. However, the Secretary A position and the Program Coordinator position had virtually identical pay and job duties. *See Frazier Dep.* at 242–43 (indicating both positions required typing, word processing, prioritizing workload, and maintaining good communication skills).

In examining the terms of employment in both positions, the Court believes that it cannot be fairly said that the new position involved the opportunity to enter into a new contract with Defendant. Therefore, the Court will grant Defendant's motion for summary judgment on Plaintiffs' § 1981 claim alleging that Frazier was denied a promotion from a Secretary A position to a Program Coordinator position.

(2). Secretary A Position in 1987.

■ Frazier claims that she was interested in the vacant Secretary A position that was available in early 1987. At that time, Frazier was a Secretary A in another division. Frazier argues that Defendant's Vice President of Training, Jill Flynn, deceitfully convinced her not to take the position by informing her there was no growth in the position. Thereafter, Frazier did not post for the position and it was subsequently filled by a white employee, Linda Hartsell. Thus, Plaintiffs are left in the precarious position of arguing that Frazier was denied a promotion to a position for which she did not apply.

Defendant argues that even if Frazier was denied a promotion, the transfer was lateral. Plaintiffs argue that the Court should examine the promotion position of Office Administrator instead of Secretary A because when Hartsell filled the position, her responsibilities were expanded. According to Defendant, if the Court was inclined to adopt Plaintiffs' arguments, it should compare the positions of Program Coordinator (the position Frazier ultimately received after Lambert left Defendant's employ) and Office Administrator. Defendant believes that this comparison will demonstrate that the differences in the positions are minimal.

The Court believes that Plaintiffs' position that the Court should compare the position of Secretary A to the position of Office Administrator borders on frivolity. Plaintiffs in essence urge the Court not to compare the position that was vacant (Secretary A), but to compare the position that Hartsell ultimately obtained. If the Court was to adopt such an argument, the Court would have to compare not only the vacant position to which a plaintiff applied, but the Court would also have to examine any promotions that the promoted person ultimately obtained. Plaintiffs have failed to provide the Court with any legal support for such a proposition.

The Court believes that such an argument unduly strains the language of § 1981, and that Defendant's motion for summary judgment on this § 1981 cause of action should be granted.

#### b. *Rhinehart.*

■ It appears from the record that Rhinehart's two failure to promote claims involve normal career ladder progressions. The Seventh Circuit has found that such potential promotions do not create a different employment relationship. *McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990). Moreover, it appears that Rhinehart herself characterized a transfer from an Operations Analyst B to a Training Analyst as a lateral transfer in the same pay grade. *See Rhinehart Dep.* at 101.

Finally, Rhinehart does not contend that she could or *actually did* apply for the position of Senior Technical Writer as an Operations Analyst B. The normal career progression would be for an employee to attain an Analyst A position from the Analyst B position. Additionally, the responsibilities and pay scales of Analyst A and Analyst B are similar.

For the reasons stated herein, the Court believes that Defendant's motion for summary judgment on these § 1981 claims are meritorious.

### c. *Delaney.*

Plaintiffs have stipulated that Delaney's claim in cause of action 11 regarding Defendant's alleged failure to promote him to a Control Supervisor position is time-barred by the statute of limitations. *See Delaney Dep.* at 193.

■ As to Plaintiffs' claim that Defendant failed to promote Delaney to the position of Merchant Supervisor, Delaney stated in his deposition that the job responsibilities of the position of Data Entry Supervisor and Merchant Service Supervisor were essentially the same. The only difference in the positions was that the Merchant Service Supervisor was compensated at a three grade higher level. However, according to Plaintiffs' response to the motion for summary judgment, this was only a difference of $2,000.00 per year. Defendant contends that the difference was less than $1,000.00 per year.

The Court does not believe that the differences in the positions amount to a change in the employment relationship. Therefore, the Court will grant Defendant's motion for summary judgment on these § 1981 claims.

### B. *Title VII Claims.*

■ Defendant contends that some of Plaintiffs' Title VII claims are time-barred because the claims of discrimination were not filed with the EEOC within 180 days of either the occurrence of the discriminatory act or the date the employee became aware of the alleged act. *See* 42 U.S.C. § 2000e–5(e). Accordingly, Defendant urges that those causes of action discussed below be dismissed.[6]

### TIME–BARRED TITLE VII CLAIMS ACCORDING TO DEFENDANT

| COA | PLAINTIFF | DISCRIMINATORY ACT | DATE OF ACT | DATE EEOC COMPLAINT FL'D |
|---|---|---|---|---|
| 1 | Frazier | Fail to promote | 6–86 | 3–8–88 |
| 2 | Frazier | Deny equal pay | 3–1–87 | 3–10–88 |
| 3 | Frazier | Fail to promote | 4–87 | 3–8–88 |
| 3 | Frazier | Upgrade Hartsell pos. | 6–15–87 | 3–8–88 |
| 11 | Delaney | Deny Control Super pos | '85 & '87 | 10–3–88 |

(Plaintiffs have stipulated this claim is time-barred although they have reserved the right to introduce evidence of this claim to prove discrimination).

| COA | PLAINTIFF | DISCRIMINATORY ACT | DATE OF ACT | DATE EEOC COMPLAINT FL'D |
|---|---|---|---|---|
| 16 | Cuthbertson | Retaliation/Harass | 9–87;11–87 | 8–11–88 |

Plaintiffs contend that claims involving Frazier are timely because the discrimination was "continuous". In support of that position, Plaintiffs have cited the case of *Taylor v. Home Insurance,* 777 F.2d 849, 856 (4th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). In that case, the Fourth Circuit held that an employee is entitled to Title VII relief even if the charge was not filed within 180 days as long as the policy or practice which caused the earlier injuries has continued into the present, causing at least one injury within the 180 days preceding the charge. *Id.* However, courts have held that a plaintiff may not "bootstrap other broad allegations of discriminatory practice onto

**6.** The Civil Rights Act of 1990 increases the time in which to file a Title VII claim from 180 days to 2 years. Accordingly, Plaintiffs argue that the Court should delay deciding this matter as it relates to the Title VII claims until the outcome of the bill is known. *See supra* note 2.

For the same reasons cited by the Court in note 2, the Court declines to delay ruling on this matter until the final disposition of the Civil Rights Act of 1990.

his timely claim". *See Evans v. Chesa-peake & Potomac Telephone Co. of Mary-land*, 518 F.Supp. 1074 (D.Md.1981).

Frazier claims that she was denied the promotion to Secretary A that was ulti-mately given to Linda Hartsell. That posi-tion became an Office Administration posi-tion in October, 1988. Frazier claims that the inaccurate representation that the posi-tion had no future influenced her not to apply for the position. Therefore, Frazier contends that her EEOC charge of March 10, 1988 was made within the time period that Hartsell's position was being upgrad-ed. Accordingly, Plaintiffs believe that they have shown a continuous pattern of discrimination.

As to Plaintiff's cause of action 16 re-garding the failure of Defendant to train Cuthbertson (November, 1987) and the fail-ure to promote him to a Data Base II assignment (September, 1987), Plaintiffs also contend that these acts were part of a continuing pattern of discrimination.

The Court finds that as a matter of law Plaintiffs have failed to establish that a nexus exists between the timely filed claims and those claims that occurred 180 days prior to the filing of the charges with the EEOC. *See Roberts v. Gadsden Me-morial Hospital*, 835 F.2d 793, 800 (11th Cir.), *modified*, 850 F.2d 1549 (11th Cir. 1988). Therefore, the Court will grant De-fendant's motion for summary judgment on Plaintiffs' Title VII claims contained in causes of action 1, 2, 3, 11, and 16.

In addition, Defendant asserts that Rhinehart's cause of action 8 regarding the denial of a pay raise is barred because she failed to raise that allegation in her EEOC charge. Defendant contends that the scope of Rhinehart's suit is limited to the scope "of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination". *See San-chez v. Standard Brands, Inc.*, 431 F.2d

455 (5th Cir.1970); *see also Chisholm v. U.S. Postal Service*, 665 F.2d 482 (4th Cir. 1981). Because the claims presented to the EEOC by Rhinehart were limited to pro-motional opportunities, Defendant contends that the denial of a wage increase did not logically grow out of the initial discrimina-tion charge before the EEOC. *See Gilli-ard v. N.Y. Public Library System*, 597 F.Supp. 1069 (S.D.N.Y.1984); *Grant v. Morgan Guaranty Trust Co.*, 548 F.Supp. 1189 (S.D.N.Y.1982).

Plaintiffs have responded to Defendant's motion for summary judgment by stating that the claim is brought pursuant to § 1981 alone and not Title VII. The Court is unable to find in the complaint or the pleadings any mention of Title VII with regards to cause of action 8. Therefore, the Court believes Defendant's motion for summary judgment as it relates to cause of action 8 in regards to the Title VII claim is moot. The Court has already found that the § 1981 claim contained in cause of ac-tion 8 is not actionable.

As an alternative position, Plaintiffs con-tend that even if a particular cause of action is time-barred for purposes of liabili-ty under Title VII, evidence of the event is admissable in an effort to prove discrimina-tion. *See United Air Lines Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The Court believes that such an argument is better raised at trial in connection with proving the Title VII claims found in causes of action 4, 6, 7, 12, 13, 14, and 17.

### C. *Wrongful Discharge in Violation of Public Policy.*

In Cuthbertson's cause of action 18 regarding wrongful discharge in violation of public policy, Plaintiffs contend that N.C.Gen.Stat. § 143–422.2 provides that discriminatory discharge is a violation of North Carolina public policy.[7] Although

---

7. N.C.Gen.Stat. § 143–422.2 provides:
 It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on ac-count of race, religion, color, national origin,

age, sex or handicap by employers which reg-ularly employ 15 or more employees.
 It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the

the rule of employment-at-will is firmly entrenched in North Carolina jurisprudence, Plaintiffs argue that the North Carolina Supreme Court has developed a public policy exception to the employment-at-will doctrine. In *Coman v. Thomas Mfg. Co. Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989), the court held that an employee that was terminated for refusing to operate a truck in violation of federal law could maintain a claim for wrongful discharge.

Defendant contends that the *Coman* case is limited to those unusual situations where a discharged employee, fired in violation of North Carolina public policy, has no other remedy available to him. Defendant argues that the language in *Coman* indicates that the court intended to create a very limited exception to the employment-at-will doctrine. *Id.* at 447–48 (discussing importance of providing a remedy to employees that are discharged for refusing to violate public policy); *see also McLaughlin v. Barclays American Corp.*, 95 N.C.App. 301, 382 S.E.2d 836 (1989) (discussing the court in *Coman* did not do away with employment-at-will doctrine).

In line with this interpretation of *Coman* is a case from the Middle District of North Carolina. In that case, Senior District Judge Gordon held that the public policy exception is limited to circumstances where the plaintiff could establish: (1) that the discharge violates some well-established public policy; and (2) that there is no remedy to protect the interest of the aggrieved employee or society. *See Harrison v. Edison Bros. Apparel Stores Inc.*, 724 F.Supp. 1185, 1193 (M.D.N.C.1989). Applying that test, the court in *Harrison* granted the defendant's motion for summary judgment of a wrongful discharge claim based on the finding that the plaintiff had an adequate remedy in Title VII.

The Court finds the reasoning utilized by the court in *Harrison* persuasive, and adopts the holding of that case. Because Cuthbertson also has an adequate remedy in Title VII as evidenced by his inclusion of Title VII in his causes of action 16 and 17,

the Court believes that cause of action 18 should be dismissed.

### D. *Intentional Infliction of Emotional Distress Claims.*

Plaintiffs causes of action 5, 9, 15, and 18 claim that Defendant's discriminatory actions constituted intentional infliction of emotional distress. Defendant claims that there is no genuine issue of material fact in dispute regarding these cause of actions, and that they should be dismissed pursuant to Defendant's motion for summary judgment.

 In North Carolina, the elements of intentional infliction of emotional distress are as follows:

(1) Extreme and outrageous conduct

(2) which is intended to cause and does cause

(3) severe emotional distress to another.

*See Trought v. Richardson*, 78 N.C.App. 758, 338 S.E.2d 617, 620, *review denied*, 316 N.C. 557, 344 S.E.2d 18 (1986). Only when the conduct "exceeds all bounds usually tolerated by decent society" and the conduct "causes mental distress of a very serious kind" will liability be imposed on the defendant for the tort. *Id.* (quoting *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979)). Summary judgment is appropriate if the plaintiff fails to prove one or more essential elements of the claim. *See Hill v. City of Kinston*, 92 N.C.App. 375, 374 S.E.2d 425 (1988); *Troxler v. Charter Mandala Center, Inc.*, 89 N.C.App. 268, 365 S.E.2d 665, *review denied*, 322 N.C. 838, 371 S.E.2d 284 (1988).

 In employment actions, North Carolina courts have been reluctant to find intentional infliction of emotional distress claims actionable. *See generally Mullis v. The Pantry, Inc.*, 93 N.C.App. 591, 378 S.E.2d 578, *review denied*, 325 N.C. 272, 384 S.E.2d 517 (1989); *McKnight v. Simpson's Beauty Supply, Inc.*, 86 N.C. App. 451, 358 S.E.2d 107 (1987); *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 340 S.E.2d 116, *review denied*, 317

fullest utilization of its capacities for advancement and development, and substantially and

adversely affects the interests of employee, employers, and the public in general.

N.C. 334, 346 S.E.2d 140 (1986); *Trought,* 338 S.E.2d at 618; *but see Brown v. Burlington Industries, Inc.,* 93 N.C.App. 431, 378 S.E.2d 232 (1989), *review denied,* 326 N.C. 356, 388 S.E.2d 769 (1990). Although there is an abundance of North Carolina case law discussing various employment issues which failed to constitute an intentional infliction of emotional distress, it does not appear that there is a case directly on point involving discrimination claims. Nonetheless, other courts have held that a mere allegation of racial discrimination is insufficient to form the basis for a claim for emotional distress. *See Nichols v. Acme Markets, Inc.,* 712 F.Supp. 488 (E.D. Pa.1989), *aff'd,* 902 F.2d 1561 (3d Cir.1990); *see also Courtney v. Canyon Television & Appliance Rental, Inc.,* 899 F.2d 845 (9th Cir.1990).

The difficulty in prevailing on a claim of intentional infliction of emotional distress is evident by language found in the Restatement (Second) of Torts, § 46 (comment (d) (1965)):

> The liability clearly does not extend to mere insult, indignities, threats.... The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate or unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

*See Defendant's Brief in Support of Motion for Partial Summary Judgment,* filed August 7, 1990 at 7.

In this case, Plaintiffs contend that Defendant's discriminatory actions of failure to promote, discharge, harassment, demotion, and inadequate pay were so severe as to constitute an actionable claim for inflic-

tion of emotional distress. Plaintiffs seem to believe that racial discrimination per se exceeds the bounds of decency tolerated by a reasonable society. *See Plaintiffs' Memorandum in Support of Plaintiffs' Opposition to Defendant's Supplemental Motion for Summary Judgment,* filed September 10, 1990, at 11 ("[A]ny employment decision, particularly an adverse one, intentionally based on race is an outrageous act"). However, at least one court has held that "racial discrimination alone ... does not state a claim for intentional infliction of emotional distress." *See Nichols,* 712 F.Supp. at 495; *see also Courtney,* 899 F.2d at 852 (holding that in discrimination action that "[D]ischarge without evidence of more does not create a case for emotional distress").

Moreover, the Court does not believe that Defendant's conduct in this case arises to the level of outrageousness found by courts finding liability under the tort. In *Brown v. Burlington Industries, Inc.,* 378 S.E.2d at 232 the evidence showed that the employer's supervisor sexually related remarks and gestures, which were made two to three times a week over an extended period of time, exceeded the bounds tolerated in a decent society. Likewise, the court in *Hogan v. Forsyth Country Club Co.,* 340 S.E.2d at 116 found it outrageous that the plaintiff's supervisor had made sexually suggestive remarks and advances.[8] Plaintiffs in the case at bar admit that little of Defendant's conduct was overt. Rather, Plaintiffs contend that the racism was subtle or covert. *See Plaintiffs' Response of September 10, 1990,* exhibit A at 3. Such an admission contradicts Plaintiffs' claim that Defendant's conduct was outrageous.

Plaintiffs also contend Defendant's conduct intentionally caused severe emotional distress.[9] However, none of the Plaintiffs

---

8. The conduct included the supervisor brushing up against the employee; rubbing his penis against her buttocks; touching her buttocks; screaming profanities at her when she refused his advances; threatening her with bodily injury; and pulling a knife on her.

Obviously, the conduct in the *Hogan* case was substantially more outrageous than in this case.

9. It appears from Rhinehart's deposition testimony that Plaintiffs have failed to show Defendant acted intentionally as required when making a claim for the intentional infliction of emotional distress. Rhinehart stated that she did not believe Defendant intentionally tried to harm her by denying her pay raises and promotions. *See Rhinehart Dep.* at 167. She also

were treated by doctors for physical ailments or received psychological counseling. While Plaintiffs have presented affidavits from each Plaintiff that state Defendant's conduct caused depression, personality change, embarrassment, minor physical pain, sexual problems, and social conflict with fellow employees, Plaintiffs have failed to provide the Court with any evidence that Defendant's actions directly caused these problems.

Accordingly, the Court believes that Defendant's motion for summary judgment on Plaintiffs' intentional infliction of emotional distress claims should be granted.

## VI. CONCLUSION.

The Court concludes that no genuine issue of material fact is in dispute regarding Plaintiffs' claims brought under 42 U.S.C. § 1981 as contained in causes of action 1, 2, 3, 4, 6, 7, 8, 10, 11, 12, 13, 14, 16, and 17. The Court believes that as a matter of law, Defendant is entitled to summary judgment on these claims.

The Court also concludes that no genuine issue of material fact is in dispute regarding Plaintiffs' claims brought pursuant to Title VII as contained in causes of action 1, 2, 3, 11, and 16. The Court believes that as a matter of law, Defendant is entitled to summary judgment on these claims. Defendant has not moved for summary judgment on Plaintiffs' claims brought pursuant to Title VII as contained in causes of action 4, 6, 7, 12, 13, 14, and 17. Accordingly, the Title VII claims contained in these causes of action continue to be actionable.

The Court further concludes that no genuine issue of material fact is in dispute regarding Plaintiffs' pendant jurisdiction claim of wrongful discharge in violation of public policy as contained in cause of action 18. The Court believes that as a matter of law, Defendant is entitled to summary judgment on this claim.

Finally, the Court concludes that no genuine issue of material fact is in dispute regarding Plaintiffs' pendant jurisdiction

stated that her supervisor's actions were merely

claim of intentional infliction of emotional distress as contained in causes of action 5, 9, 15, and 18. The Court believes that Defendant is entitled to summary judgment on these claims.

In summary, the Court will grant complete summary judgment on causes of action 1, 2, 3, 5, 8, 9, 10, 11, 15, 17, and 18. The Court will grant summary judgment on the remaining cause of actions numbers (4, 6, 7, 12, 13, 14, and 16) except to those portions of the claims that are actionable pursuant to Title VII.

## VII. ORDER.

NOW, THEREFORE, IT IS ORDERED that Defendant's motions for partial summary judgment be, and hereby are, GRANTED IN WHOLE AS TO CAUSES OF ACTION 1, 2, 3, 5, 8, 9, 10, 11, 15, 16, AND 18.

IT IS FURTHER ORDERED that partial summary judgment be GRANTED AS TO CAUSES OF ACTION 4, 6, 7, 12, 13, 14, AND 17 EXCEPT AS TO THE TITLE VII CLAIMS CONTAINED THEREIN.

### JUDGMENT

In accordance with the Memorandum of Decision and Order filed simultaneously with the filing of the Judgment,

IT IS ORDERED, ADJUDGED, AND DECREED that:

(1) First Union National Bank's motions for partial summary judgment be, and hereby are, GRANTED in whole as to Causes of Action 1, 2, 3, 5, 8, 9, 10, 11, 15, 16, and 18;

(2) First Union National Bank's motion for partial summary judgment be, and hereby are, GRANTED as to Causes of Action 4, 6, 7, 12, 13, 14, and 17 EXCEPT AS TO THE TITLE VII CLAIMS CONTAINED THERE-IN;

(3) Plaintiffs shall have and recover nothing of First Union National Bank on Causes of Action 1, 2, 3, 5, 8, 9, 10, 11, 15, 16, and 18, and on Causes of Action 4, 6, 7, 12, 13, 14, and 17

a mistake. *Id.* at 167–68.

except as to the Title VII claims contained therein;

(4) Plaintiffs' complaint be, and hereby is, DISMISSED WITH PREJUDICE AS TO CAUSES OF ACTION 1, 2, 3, 5, 8, 9, 10, 11, 15, 16, and 18, AND AS TO CAUSES OF ACTION 4, 6, 7, 12, 13, 14, and 17 EXCEPT AS TO THE TITLE VII CLAIMS CONTAINED THEREIN; and

(5) Each party shall bear their and its own costs.